In the Matter of the Estate of WILLIAM DELAVAN BALDWIN, Deceased.*

Surrogate's Court, Westchester County, December 10, 1935.

* See, also, *Matter of Baldwin* (157 Misc. 692).

*Gilbert H. Montague* [*A. A. Clifford Hansen* of counsel], for Thomas M. Logan and The Chase National Bank, as executors.

*Milbank, Tweed, Hope & Webb* [*Timothy N. Pfeiffer* of counsel], for The Chase National Bank, as executor.

*Park A. Doing,* for The Chase National Bank, as trustee named in the will.

*Elijah T. Russell* [*Allen J. Weisman* of counsel], for Delavan Munson Baldwin, individually and as general guardian, etc.

*Livermore & Livermore* [*Russell B. Livermore* of counsel], for Helen R. Baldwin, widow and children.

*Szold & Brandwen* [*Maurice Ravage* of counsel], for the National Bondholders Corporation and others, objectants.

*Lee Parsons Davis,* special guardian.

SLATER, S. The petition for judicial settlement, praying for instructions, together with the account of proceedings, was filed in this court July 12, 1935. Citation was returnable August 27, 1935. The National Bondholders Corporation and others were cited because they had served a summons upon the executors in March, 1935, commencing suit in New York county against the executors and some ninety other persons and estates, wherein judgment was demanded for an account of acts of directors of the former National Surety Company, as well as judgment for damages. The title to such suit is " National Bondholders Corporation and Henry K. Burns, suing on their own behalf and on behalf of all other creditors similarly situated of National Surety Company, and Aaron Davis, suing on his own behalf and on behalf of all other stockholders similarly situated of National Surety Company, Plaintiffs, against William B. Joyce " and others.

On September 10, 1935, the National Bondholders Corporation, Henry K. Burns and Aaron Davis, stockholders of the National Surety Company, by Szold & Brandwen, attorneys, appeared in the instant proceeding by filing a general notice of appearance. On the same date they filed objections to the account. In consequence, they submitted their rights to the jurisdiction of this court. On October 7, 1935, Szold & Brandwen, Maurice Ravage of counsel, for all the plaintiffs, filed with the court a memorandum of law in support of their objections. At the hearings, Maurice Ravage, of counsel, appeared on behalf of all the said plaintiffs. On November 25, 1935, the attorneys for said National Bondholders Corporation and others, as plaintiffs, submitted a second memorandum of law and, for the first time, raised a question as to the jurisdiction of the court to hear and decide the objection. This was an after-thought, of course  They had been, and are, properly before the court. The court holds to sustain its jurisdiction in this phase of the accounting matter. (*Matter of Daufkirch*, 145 Misc. 396.)

The National Bondholders Corporation and others, claiming to be interested in the estate, object to any decree that would allow the executors to pay, from assets in their possession, the principal of any trust to the trustees, *or any income of any beneficiary under any trust*, on the ground that it has commenced an action against the executors herein and that, if disposition is made of any of the assets of the estate, the objector will. be compelled to pursue the various assets and beneficiaries in order to satisfy the claim against the estate.

Upon the hearing a motion was made by attorneys appearing for the executors and the beneficiaries to dismiss the objections of the National Bondholders Corporation and others. Decision was reserved and will now be given.

The decedent died September 26, 1930, and on October 6, 1930, letters testamentary were issued to the executors. The decedent's will is dated December 12, 1929, and disposed of an estate of about $3,000,000. After giving a few small legacies, the testator created trusts for his several children in various definite large amounts of money. The residuary estate is given in trust for the life of his wife, with remainders to the children and grandchildren. The will appointed Thomas M. Logan and The Chase National Bank as executors, and. named The Chase National Bank as trustee of the several trusts.

Commencing on October 16, 1930, the executors published a notice for claimants, pursuant to law, to present their claims against the estate, and the time to present such claims expired on April 30, 1931. On or before October, 1931, all known debts had been paid, as well as estate and transfer taxes.

On October 30, 1931, the executors filed their account. Objection was made to the account of the executors by the widow and children, and the court was requested to direct the executors to pay over to the trustees the securities comprising the principal of the trust, together with the income from said securities from the date of the death of the testator. In October, 1931, the value of the estate, less expenses of administration, thus held by the executors had decreased to an amount of about $1,100,000, largely on account of the financial condition of the country and the depressed values of securities and properties. At that time the estate was considerably less than sufficient to set up the trusts for the children and grandchildren. At such time, for all practical purposes, the executors had finished the administration of the estate.

The deficiency in the assets of the estate brought about two conditions: *First*, the setting up of definite sums of money in trust, as named in the will, for the children and grandchildren would have depleted the estate and placed in each trust assets at such a low value that they, in ordinary times, would have made the trust fund two or three times larger in amount than the testator directed; *second*, the setting up of such fixed sums of money for the children and grandchildren would have left the residuary trust for the widow without value. For these reasons, after a conference with the surrogate and upon assent of all the parties, a decree was entered on January 30, 1932, directing the executors not to allocate the funds into the trusts (other than the one for Caroline Munson Marshall) or to pay over to the trustees the securities comprising the principal of said trust until further order of the court, the said executors to hold the corpus and pay the remainder of the income

on hand *pro rata* to the trust beneficiaries and to continue the payments quarter-yearly until further order of the court. The intention of the parties and the necessities of the case required such action. (2 Jessup-Redfield [3d ed.], § 1003-b, p. 2099.) Controlling reasons existed why the executors should serve as trustees for the time being.

In his memorandum opinion the court stated: " In fact, the court has directed that the trusts be not set up on account of the present deflation of securities." The executors complied with the direction of the court and held the securities as trustees and have since paid the income of the estate to the beneficiaries.

On March 28, 1935, the executors were served with a summons in an action by the objectants and others against the estate and other defendants. On June 10, 1935, the executors were served with a complaint, setting forth an alleged liability of the decedent for his action as a director of the National Surety Company, then in liquidation. The National Surety Company continued in business until June, 1933, nearly three years after decedent's death. On January 30, 1932, the date of the entry of the decree, the claims of these objectors did not exist.

Since the service of summons, the executors have discontinued paying income to the beneficiaries. Upon the hearing the court took testimony with regard to the financial situation and needs of the beneficiaries, children and grandchildren. The discontinuance of payment of income has caused, and is causing, hardship to such beneficiaries.

No claim was filed with the executors in behalf of the National Surety Company or its bondholders or stockholders, nor by the plaintiffs, pursuant to section 207 of the Surrogate's Court Act, and the first knowledge which they had of such contingent claim was at the time of the service of the summons in March, 1935.

The law looks to the orderly conduct of an estate and it has provided such procedure. There was no debt owing by the decedent to the plaintiffs and no claim could have been placed before the executors for allowance or rejection. There is no claim at the present time that can be allowed or rejected.

A contingent claim is one which has not accrued and which is dependent upon the happening of some future event. Such a claim against an estate is one where the absolute liability depends on some future event which may never happen and which, therefore, renders such liability uncertain and indeterminable.

The rights of the suitors at law are wholly contingent and, of course, unliquidated. The objectors could not become creditors of

the estate until a judgment had been obtained against the executors. (*Matter of Rogers*, 142 Misc. 572; *Matter of Wellman*, 148 id. 102, 104, 105.)

The power of the surrogate under section 40 of the Surrogate's Court Act is broad and ample to direct executors in their control of estates. In view of the necessities of the case, in January, 1932, when the intermediate decree was made, the court, pursuant to its power of direction, authority and control, authorized the executors to continue to hold *in solido* the then corpus, and not to allocate, as such conduct would be violative of the testator's manifest intent.

" The actual division of the estate into five parts is not necessary to initiate the trust. It was for the mutual benefit of all that the estate was kept together, and no one objected at the settlements that there was no actual division. *Legally* it is divided. The shares are separate and each gets his proper income therefrom." (*Blake* v. *Blake*, [1883] 30 Hun, 469, 471 [Second Dept.], opinion by BARNARD, P. J.; *Matter of Jackson*, 138 Misc. 167, 175, and cases cited; Surr. Ct. Act, § 314, subd. 6).

Executors, from the time they qualify as such, become trustees of two classes of people — creditors and beneficiaries. At that time, January, 1932, there were no creditors. The duties of the executors, so far as the property was concerned, had ended. They held as trustees for the beneficiaries. (*Mahoney* v. *Bernhard*, 45 App. Div. 499, 501.) The surrogate, under the provisions of subdivision 5 of section 20 of the Surrogate's Court Act, may by order require executors and administrators, subject to the jurisdiction of his court, to perform any duty imposed upon them by statute, or by the Surrogate's Court under the authority of the statute. The Surrogate's Court has jurisdiction to direct and control the conduct of executors and administrators. The court may make a full, equitable and complete disposition of the matter. (*McQuaide* v. *Perot*, 223 N. Y. 75, 82.)

I hold that, since January, 1932, the corpus of the estate has been held in trust *in solido*, freed from the acts of the executors. The court chose the executors to serve as trustees until the trust funds were divided and allocated. The court made a distribution of all the estate and the executors are now holding the corpus of the estate for the benefit of the trusts and are acting in such capacity as trustees under the direction of the court They have no assets in their possession to be charged with any debt or claim at this time. (*Matter of Hunt*, 121 App. Div. 96, 103.) That function was assumed by direction of the surrogate and the consent of all

the beneficiaries. The title to the property was vested in the beneficiaries. They acquiesced in such holding *in solido* until the funds could be divided and set up in the amounts named in the will. The duration of the holding by the executors might be a considerable time in order to ride out the financial storm and to meet the intention of the testator, especially with respect to the gift of the residuary estate to his widow. Such holding does not alter the fact that the duty of the executors, as such, had terminated. The beneficiaries could by acquiescence authorize the acts of the executors in holding their own property for their own benefit.

The will clearly contemplated a period of time when the duties of the executors as such should end. The duty to pay debts and the legacies presently payable were strictly executorial and, upon the accomplishment of these purposes, the property was given upon trust to divide. The intermediate account and decree of January 30, 1932, showed the payment of debts and legacies and stated the balance on hand. The reasonable intendment and legal effect of the decree was to discharge the executors, as such, but with the direction that they hold the whole estate as trustees under the will for the time being. The fact that the executors acting as trustees have not made an actual division in shares as directed by the will does not change the question. The funds in their hands have become exclusively a trust fund under the terms of the will. The duties to be performed by them under the direction of the court are such as are usually devolved upon trustees of express trusts and supervene upon the termination of the duties strictly executorial. (*Laytin* v. *Davidson*, 95 N. Y. 263.)

In *Matter of Hood* (98 N. Y. 363, at p. 370) the court said: " In the case at bar there was no provision in the will, or by intendment, that the two functions were to be separate,  *  *  *. The case of *Laytin* v. *Davidson* (95 N. Y. 263) is not adverse to the views already expressed. Trusts were there created under the will, and the decree of the surrogate directed that the property be held by the executors as trustees." (*Matter of Glenn*, 231 App. Div. 681, 683; affd., 258 N. Y. 536.)

The court, in *Monson* v. *New York Security & Trust Co.* (140 N. Y. 498), said that, since the securities were dealt with *in solido*, the interests of the respective trusts in each and all securities of the estate were to be deemed less than that fractional interest which was equivalent to the fractional proportion which each trust capital bore to the total capital of all the trusts at the time they should have been segregated. It was not necessary, in order that each party should enjoy and have the benefit of his or her proportion of such estate, to have formal lodgment or segregation made of

the shares of the estate belonging to such persons. As long as the whole estate was thus kept, each party in fact owned his or her proportionate share of the income from, and the principal of, each security. Convenience of administration might dictate the keeping of the estate *in solido*. At page 513 the court said: " By keeping the whole estate thus invested the sisters' shares in the estate of the father were necessarily represented in these securities."

Where the duties of a trustee are imposed upon a person he will be regarded as a trustee rather than as an executor. (*Mee* v. *Gordon*, 187 N. Y. 400, 407; *Matter of Kohler*, 231 id. 353, 366; *Matter of Clark*, 251 id. 458, 466; *Matter of Sidenberg*, 147 Misc. 742, 744; *Matter of Dade*, 155 id. 427, 429.)

The general scheme of the law has provided for:

(1) The submission of debts and claims (Surr. Ct. Act, art. 12). The general rule is that the presentation of a claim to an executor is not a condition precedent to the commencement of an action against him upon such claim. The submission of claims is one of the means provided by law for adjusting them, and, if rejected, they come up for hearing before the court.

(2) Contingent liabilities where the contingency may be arrived at with reasonable accuracy. Section 207 of the Surrogate's Court Act states how those having contingent claims, where the amounts may be arrived at, may proceed. The objectants here have neither submitted a contingent claim to the executors, nor to the court, nor have they submitted any affidavit setting forth the facts upon which such contingent liability is based and the probable amount thereof. The objectants have not brought themselves, and cannot bring themselves, within the purview of section 207. Section 207 of the Surrogate's Court Act is a new amendment to the act (Laws of 1921, chap. 629) and it is only by virtue of that section that contingent and unliquidated claims may be filed, and then only by complying with its provisions.

(3) Contingent liabilities where it is impossible to arrive at any reasonable, definite sum. (Dec. Est. Law, §§ 116, 117.) The claimants do not fall within the class of creditors so that the estate need be held up in order to determine the claim. Their claim is something not yet due and, not being due, the objectants are not creditors having a debt against the decedent's estate. At no time did the objectors have more than a cause of action. (*Matter of Littleton*, 129 Misc. 845; *Matter of Schinasi*, 139 id. 459, 471; affd., 233 App. Div. 738; *Matter of Weissman*, 140 Misc. 360; *Matter of Gellis*, 141 id. 432; *Matter of Rogers*, 142 id. 572; *Matter of Madden*, 155 id. 308.)

The objectants presumably have proceeded pursuant to sections 116, 117 and 140 of the Decedent Estate Law. (*De Planter* v. *De Kryger,* 117 Misc. 795.) The next step in the orderly procedure of the law for those who find themselves in the position of the objectors is to be remitted to their rights against the distributees under section 170 of the Decedent Estate Law, should the objector procure a judgment in a court of last resort. (*Matter of Ferber,* 149 Misc. 840; *Matter of Frommelt,* 154 id. 81; *Matter of Gellis, supra,* p. 436.)

In *Matter of Dusenbery* v. *Bragg* (241 App. Div. 553, affg. *Matter of Rogers, supra*) the court, dealing with a mortgage bond, said: " The statute has given claimant a simple and direct method of pursuing assets of an estate into the hands of distributees." (Citing Dec. Est. Law § 170; *Brooklyn Savings Bank* v. *Wechsler Estate,* 259 N. Y. 9.) The court further said that " A mortgage is not a claim against the executors, and is not a claim against the personal estate in their hands." Following this reasoning, it may be said that a right of action, or a suit at law, is not within the definition of claims that executors are bound to recognize. The court suggests that the recent amendment to section 207 of the Surrogate's Court Act was a remedy for contingent claims. The " claimants' remedy would appear to be provided for in section 170 of the Decedent Estate Law, rather than in a proceeding against executrices who have paid out all the money of the estate pursuant to a decree of the surrogate, after advertising for claims, and without any knowledge of any claim." Of course, if it is impossible to arrive at some amount, then the claim is less than contingent. It is nothing.

If there had been no intermediate account of proceedings, nor a decree thereunder, it could not have been held otherwise than that the executors held as trustees. With the debts paid on or before January, 1932, the executors, as such, became common-law trustees for the beneficiaries. (*Matter of Booth,* 139 Misc. 253.) The trusts were created at the death of the testator. They did not come into being by the action or non-action of the executors. (*Matter of Bird,* 241 N. Y. 184, 188; *Matter of Harden,* 177 App. Div. 831, 837; affd., 221 N. Y. 643; *Matter of Stewart,* 140 Misc. 155, 157.)

The executors could have carried on without the decree until such time as they saw fit to place the securities in the hands of the named trustees, paying the income to the beneficiaries. It was no part of their executorial work to do this. They could make themselves trustees for the time being to meet the exigencies of the situation and to carry out the apparent intent of the testator.

In *Field* v. *Suchman Corporation* (135 Misc. 626), after the pay-

ment of debts and the distribution of the estate (similar to the holding by the executors in the instant case of the funds *in solido* for the beneficiaries of the trust), a claim was filed under a deficiency judgment. The court held that the right to enforce ran pursuant to section 170 of the Decedent Estate Law against the distributees. It said that no effective judgment could be entered against the administrators in their official capacity because they complied with the provisions of section 208 of the Surrogate's Court Act. (Citing *Collier* v. *Miller*, 62 Hun, 99; *Matter of Perkins*, 122 Misc. 593.) To the same effect is *Matter of McIntyre* (144 Misc. 177).

In *Matter of Horner* (149 Misc. 695) the application was by an alleged contingent creditor seeking a compulsory accounting. The application was denied. It was a bond and mortgage case. The court held that, even if the deficiency judgment on the bond should be recovered " in justice and in equity, that the administrator, in the absence of bad faith or fraud, may not be held personally liable for the amount thereof." The administrator in good faith distributed the estate of the decedent after the time to present claims against the estate had expired. The court continued and said that the amendment of section 207 was enacted for the protection of contingent claimants and creditors pending a determination of the liability, provided they could qualify under the terms of the section. The court further said that " *this amendment was also intended to protect the administrator or other representative of an estate where no contingent claim is filed in compliance with the section.* * * * Our legal system of administration contemplates orderly expedition in the distribution of an estate. The rights of creditors should be timely asserted, * * *. The contingent creditor is, therefore, under a duty to assert his claim within the statutory period or before the distribution of the estate." The court further said that, in the event of the recovery of a deficiency judgment, the statute affords a remedy against the distributees pursuant to section 170 of the Decedent Estate Law.

The objectants rely upon section 269 of the Surrogate's Court Act as requiring the holding of all principal and *income* in the hands of executors to meet their contingent demand. It cannot serve them so well. The history of the law regarding contingent claims against estates has been one of evolution. Section 269 is derived from section 74 of title III of chapter VI of part II of the Revised Statutes of 1829, which originally read: " If upon the representation of an executor or administrator, or otherwise, it shall appear to the surrogate, that any claim exists against the estate of the deceased, which is not then due, or upon which a suit is then pending, he

shall allow a sum sufficient to satisfy such claim, or the proportion to which it may be entitled, to be retained for the purpose of being applied to the payment of such claim when due, or when recovered, or of being distributed according to law. The sum so retained may be left in the hands of the executor or administrator, or may be directed by the surrogate to be deposited in some safe bank, to be drawn only on the order of the surrogate."

The court, in *Bankers Surety Co.* v. *Meyer* (205 N. Y. 219 [1912]), found that the then Code sections were inadequate to afford protection and granted equitable relief to bring actions to establish the validity of certain notes. The revisers of the Surrogate's Court Act (1914) were at work at this time (1912) and section 2745 of the Code of Civil Procedure was amended to provide for the lack referred to in *Bankers Surety Company* v. *Meyer* (*supra*). Note by revisers reads: " New matter inserted to cover Bankers Surety Co., 205 N. Y. 219." Still section 269 was found lacking to cover a case such as the instant one where the claim was indeterminate. It seeks to allow sums to satisfy such claim. This means *claims ascertainable in amount.* Here the action is one brought against many defendants; the judgment prayed for is in the millions; the merits cannot be known before trial. It was not the legislative intent to hold undistributed estates, both principal and income, for such indefinite time. Section 269 has no application to these facts. (*Matter of Perkins,* 122 Misc. 593, 598 [1924].) The Legislature later, however, provided for contingent claims of *known amounts,* if presented before decree, by section 207 of the Surrogate's Court Act (Laws of 1921, chap. 629, § 1). (See *Matter of Littleton,* 129 Misc. 845.)

After the date of this amendment (1921), section 269 must be read and interpreted in connection with it. (2 Jessup-Redfield [3d ed.], § 1180, p. 2442.) Still the sections are not broad enough to cover cases of the character of the one here presented. This claim is unascertainable. It is legally, practically and mathematically an impossibility to determine the amount. As applied here, section 269 becomes oppressive and absurd.

The court has discretion in determining what fairly should be done with the funds of an estate against which contingent claims are made. In reaching a determination the court must take into account the distributees as well as those of any contingent claimant. If the deceased were living, no process would be available to the claimant to reach his property before judgment. No process is available to the claimant as against any living defendant in the suit brought by the objectant until it is carried into judgment.

The equities of the situation are entirely in favor of the distributees and their rights, as beneficiaries, to receive income from the trust funds, as well as to have the trust funds placed in the hands of the trustee named by the testator. By article 7 of the Decedent Estate Law a complete system is established for the pursuit by a claimant of the assets of a deceased in the hands of his distributees. (*Matter of Concklin*, 150 Misc. 53.)

The objectors have no standing in this proceeding. The motion to dismiss the objections of the National Bondholders Corporation and others is granted.

Proceed accordingly.