OPINION OF THE COURT
John D. Bennett, J.
What is essentially a rather simplistic determination of a claim against this estate has been made unnecessarily complicated by a series of tortured maneuvers by the litigants in this court and the Supreme Court. As a philospher observed in the book of Ecclesiastes (7:29): "God made us plain and simple, but we have made ourselves very complicated.”
This claim has its genesis in a motion for summary judgment in lieu of complaint (CPLR 3213) based upon a separation agreement providing for the payment of $35,000 per year to the plaintiff (claimant) payable in monthly installments of $2,971 for her life or until she remarries, in addition to other benefits. The subsequent decree of divorce expressly provided that the separation agreement was not merged in the judgment.
Although there are three executors — two individuals and a bank — they have all been represented in these proceedings by one of their number, Mr. Levine, an attorney. His initial response to the Supreme Court proceeding was to bring on a motion which, among other relief, requested a transfer of the litigation to this court. By decision of October 31, 1977 a consent to receive the litigation was given by this court, *928 subject to the Supreme Court’s approval. The motion for a summary judgment was thereafter denied by the Supreme Court without prejudice to renewal and the matter transferred to this court.
That motion has now been renewed and is based upon all of the papers filed in the Supreme Court matter, including additional papers filed here. Mr. Levine’s opposition to a summary disposition of this claim is based upon three major arguments:
1. That a separation agreement is not "an instrument for the payment of money only” within the contemplation of CPLR 3213 and accordingly a summary disposition under that section is improper.
2. That the Supreme Court action was "time-barred” because it was not commenced within 60 days after his alleged rejection of the claim (SCPA 1810).
3. That in any event the claim is subject to arbitration under clause "Fifteenth” of the separation agreement.
The question of what constitutes an instrument for the payment of money only under CPLR 3213 has been characterized as the "most vexing problem that has arisen” under the statute (4 Weinstein-Korn-Miller, NY Civ Prac, par 3213.02a). Cases such as Wagner v Cornblum (36 AD2d 427) and Orenstein v Orenstein (59 Misc 2d 565), have held that a separation agreement is not "an instrument for the payment of money only” primarily emphasizing the word "only” and the fact that a separation agreement normally contains more than provisions merely for the payment of support. This extremely literal interpretation of the statute has met with less than unanimous approval (see Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3213:4; and Rickert v Packet Facilities, 35 AD2d 711, 712 [in a strong dissent Justice McGivern terms the majority’s result as "purposeless exaltation of form over substance”]). However the struggles may rage in other courts over technicalities of procedure, the Surrogate’s Court has historically been thankfully free of emphasis on form over substance.
Matter of Razoux (154 Misc 477) is an example of the disfavor with which technicalities of procedure and sharp practice are viewed in the Surrogates’ Courts. There the court stated (p 478): "Perhaps such a highly developed practice may serve some good purpose in courts of general jurisdiction. On *929 this question the court ventures no opinion. It cannot fail to have untoward effects in a tribunal whose chief functions are the safeguarding of the rights of widows and orphans”. (See, also, 1 Butler, New York Surrogate Law and Practice, § 376.) Conceding that as a technical matter the claimants use of CPLR 3213 was ill-advised, she is nevertheless not without a remedy in this court. Whether or not this court may exercise any of its subject matter jurisdiction is no longer dependent upon the kind of proceeding in which the matter is raised (SCPA 202). The statute permits this court in any proceeding, whether or not specifically provided for, to exercise any of its jurisdiction even though the jurisdiction sought to be exercised is incidental to a different proceeding. It is therefore within this court’s prerogative to convert the transferred Supreme Court action into a proceeding for the determination of a claim either under SCPA 1809 (proceeding by fiduciary to determine validity of claims) or as an incidental and preliminary step in an accounting proceeding following a creditor’s application for a compulsory accounting (SCPA 1808, subd 5).* Moreover, even without implementing SCPA 202 to transform the CPLR 3213 motion into a determination for a claim the relief could be premised on the theory that the filing of a claim is, in and of itself, the commencement of a proceeding (Matter of Feinberg, 18 NY2d 499) and that this motion for summary relief is made in connection with that "proceeding”.
Much is made of the argument that the Supreme Court action was "time-barred” by an alleged rejection of the claim within 60 days of the action’s commencement (SCPA 1810). Pages are given over to recitation of communications between the claimant and Mr. Levine attempting to demonstrate that, if not in whole, at least in part, he rejected the claim. The argument in its entirety is tiresome and without necessity (even though it clearly appears that he did not reject the claim as such but merely the mechanics of payment) since the only effect of the short 60-day Statute of Limitations is to foreclose the claimant from a civil court action and confine him eventually to the jurisdiction of the Surrogate’s Court for a determination of his claim. Because that is exactly what has occurred, namely the claimant is now before the Surrogate’s *930 Court, there is no sense whatever to a continuation of any argument based upon the short Statute of Limitations.
Mr. Levine’s final argument is posited on article fifteenth of the separation agreement which contains an arbitration clause reading in part as follows: "The Husband may, at any time that he believes his total income and resources to be insufficient to bear the obligations of this Stipulation, thereupon make a full disclosure to the Wife of his finances and attempt to negotiate a reduced alimony. If such negotiations do not result in a new agreement with the Wife providing for reduced payment, the Husband may then submit the issue to arbitration under the Rules of the American Arbitration Association. In such case, both the Husband’s and the Wife’s resources and income shall be disclosed to the Arbitration Panel and to each other and taken into account in adjudicating the Husband’s claim for a reduction in alimony.”
How this clause can be interpreted to survive the decedent’s death and permit his estate to renegotiate its terms is a mystery, but that is exactly the argument that is made. The paragraph reads clearly enough that "[t]he Husband may, at any time he believes his total income and resources to be insufficient * * * attempt to negotiate a reduced alimony.” (Italics supplied.) Certainly death has sealed not only the decedent’s lips but any thoughts or beliefs he might have about the condition of his resources. More importantly at this point the decedent as a person has no income and no occasion to be concerned about the vagaries of existence in the temporal world. Death on May 13, 1976 brought to an end all of those cares and concerns and left only a mopping-up operation of collecting assets and liquidating them for the purpose of payment of debts and distribution. Accordingly the arbitration clause in paragraph fifteenth is of no force and effect to diminish the claim in any way.
Claimant is seeking to recover at this time monthly payments of $2,971 which have fallen due since June 1, 1976, almost two years ago, as against which only a payment of $10,000 has been made by Mr. Levine, leaving a balance of more than $55,000 due at this time with interest. Paragraph eighth of the agreement specifically provides that the payments are to cease only upon the "Wife’s death or remarriage” and that "the Husband’s obligation here shall constitute an obligation of his estate should he predecease the Wife”. The same paragraph gives the estate the option of *931 securing all further payments by purchasing an annuity, surety bond or other adequate security. Claimant’s amended and supplemental claim estimates that the commuted value of her claim based upon her life expectancy is $875,000 and she requests a reservation of that amount from estate assets. Significantly at no time has Mr. Levine challenged the basic validity of this claim but merely its extent. On page eight of his reply affirmation dated September 30, 1977 he states: "The estate never denied at any time that plaintiff is a bona fide creditor. The question is, how much?”
Among the duties of an executor is an important one of ascertaining what debts there are (3 Schouler, Wills, Executors and Administrators [6th ed], § 2699). It needs emphasis that a representative of an estate is the fiduciary of its creditors as well as legatees and distributees (Blood v Kane, 130 NY 514; Matter of Weinberg, 162 Misc 867; Matter of Baldwin, 157 Misc 538; Matter of Hess, 120 Misc 372; and 33 CJS, Executors and Administrators, § 142). As this court has on occasion remarked: A fiduciary must be just (in paying legitimate debts) before being generous (to beneficiaries). There is no room in fiduciary administration for the representative who seeks to wear down creditors to a point where they will take less than they are legally entitled to. In substance, a fiduciary is not obligated to defend against a valid claim (2 Woerner, American Law of Administration [3d ed], pp 1024-1025) nor is it his duty to compel a creditor to accept less than he is legally due (Matter of Pillsbury, 175 Cal 454). It is only those claims which are of doubtful legality that a representative has a duty to defend against (Matter of Taylor, 251 NY 257; 3 Schouler, Wills, Executors and Administrators [6th ed], § 2300). Finally there is a duty placed upon this court to control the conduct of fiduciaries, discourage vexatious litigation and protect the estate from unnecessary costs and expenses attending the assertion and settlement of claims (McQuaide v Perot, 223 NY 75, 82; Matter of Baldwin, supra; former Surrogate’s Court Act, § 40, subd 3 [presently SCPA 201, subd 1]; 3 Schouler, Wills, Executors and Administrators [6th ed], § 2700).
There is significant evidence that Mr. Levine has strenuously opposed any attempt at settlement by one or more of his cofiduciaries. In his affirmation of August 30, 1977 he takes his individual coexecutor, Mr. Tankell, to task because he "conducted private negotiations without my knowledge or *932 approval with the claimant Rose Hollinger which may adversely affect the estate. Plaintiff’s attorneys, behind my back, have negotiated with Mr. Tankell and his attorney, Mr. Vittoria * * * Mr. Tankell, and his attorney have sought to abandon defenses available to the Estate under the separation agreement.” Attached to this affidavit is a notice to his cofiduciaries in which he states that he has been informed that "You have by-passed Mr. Levine your coexecutor and estate attorney” in an attempt to negotiate the claim directly with claimant’s attorneys. The notice then advises them that they will be held liable in any accounting for abandoning any defenses available, opposes retention of Mr. Vittoria as leading to an "increase” in legal expenses and opposes any settlement without his prior written approval.
It is elementary that each executor has the right to retain independent counsel to advise him and that it was perfectly within Mr. Tankell’s province to retain Mr. Vittoria and to seek independently to adjust this claim. "[0]ne administrator may release, pay or compromise a debt in spite of 'the actual and known dissent of the co-administrator’ ” (Matter of Leopold, 259 NY 274, 278; EPTL 10-10.7).
Finally, there being no triable issues of fact with regard to this claim, the motion for summary judgment is granted and the claim allowed to the extent of the monthly payments that have accrued together with interest at the legal rate. As for payment of the claim, it is conceded that this estate is conservatively worth in excess of two million dollars and that it monthly earns in excess of $19,000 from a sale of one of the decedent’s business interests. Accordingly unless the executors show cause within 15 days of the date of this decision why all accrued payments together with interest should not be made, those payments are directed to be made at the end of that period. In addition a conference is directed to be held on this matter on the 14th day of April, 1978 at 10:00 a.m. at which time a discussion of how the balance of this obligation is to be funded will take place. In addition to Mr. Levine, Mr. Tankell is directed to appear with his attorney, together with a representative of the corporate fiduciary. A copy of this decision is being mailed directly to Mr. Tankell and the corporate fiduciary.
Settle order on five days’ notice with three additional days if service is made by mail.

 Claimant eschewed bringing a compulsory accounting proceeding in this court apparently believing her CPLR 3213 vehicle to be more productive, failing to realize that under SCPA 1808 (subd 5) the court can avoid all of the attendant expenses of a full accounting by directing a preliminary determination of the claim.