OPINION OF THE COURT
Bertram R. Gelfand, J.
This is an application to receive the proceeds of causes of action arising from decedent’s death and to judicially account therefor. Objections to the account based upon the proposed allocation of the entire proceeds of the recovery to the wrongful death action have been filed by a claimant against decedent’s estate. Objectant’s claim arises from the same accident which resulted in decedent’s death. The nature of objectant’s claim is that he has a pending negligence action in the Supreme Court against decedent’s estate for an amount in excess of the available liability insurance. The value of this claim is necessarily still at issue and it cannot be reduced to a liquidated sum by a proceeding before this court.
On their face, the objections present the broad issue as to whether a plaintiff in a pending negligence action is entitled under SCPA 1804 to have estate assets placed in a reserve to be applied to a possible future recovery, and, if so *480 entitled, the scope of such reserve and the length of time that it should be required to be held.
Decedent died intestate on November 21, 1981 from injuries sustained in an automobile accident on that day. The accident resulted from a head-on collision between the vehicle operated by decedent and an automobile operated by objectant. After the initial collision, both of the automobiles collided with other vehicles. It is not disputed that decedent sustained injuries which were fatal. He was removed from the scene of the accident by ambulance to the hospital where he was pronounced dead on arrival. Objectant contends that he sustained serious and permanent injuries that disabled him for almost a full year.
Decedent, who was 41 years of age and unmarried at time of his death, was survived by his parents, who reside in Puerto Rico, as his only distributees. Limited letters of administration issued to decedent’s brother on February 26, 1982, and he subsequently commenced litigation against the owners and operators of the vehicles which had struck decedent’s car. Petitioner has received an offer from the owner of the vehicle which initially struck decedent’s car to settle the actions for the sum of $16,500. The accident resulted in several casualties and the amount of the offer is a product of dividing available insurance coverage among multiple casualties with the recovery being further tempered by serious issues of contributory negligence.
The administrator now seeks modification of his limited letters of administration in order to permit the receipt of the proceeds of said compromise. Aside from the proceeds of the recovery, there are no other possible assets of the estate. Moreover, petitioner seeks to allocate the entire proceeds of the settlement to the cause of action for wrongful death, and to distribute the net distributable proceeds entirely to decedent’s parents. No party has placed at issue the reasonableness of the settlement or any other question except the issues raised by objectant.
Objectant’s possible claim is, of course, limited to only so much of the settlement as becomes an estate asset by dint of being allocated to personal injuries (see Ratka v St. Francis Hosp., 44 NY2d 604; EPTL 5-4.4). Objectant ar *481 gues that a substantial portion of the total recovery should be allocated to the cause of action for decedent’s personal injuries.
The pragmatic posture objectant finds himself in is that his pending negligence action against decedent’s estate is covered by liability insurance only to the extent of a maximum of $10,000. Decedent’s carrier has offered to pay the full amount of the policy. Upon the argument of this application, objectant candidly stated that he is endeavoring to solve a practical problem. He wishes to ascertain if there are other assets to satisfy a judgment before he opts to proceed to trial rather than accept the settlement offer of decedent’s insurer.
SCPA 1804 (subd 1) provides as follows: “Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate * * * there shall be no distribution without reservation of such estate assets as the court shall determine to be adequate to pay the contingent or unliquidated claim when the amount thereof shall become due and payable”.
The authorities are divided upon the issue before the court. There are no appellate decisions discussing the issue. Among the reported decisions of trial courts, there are authorities which distinguish an unliquidated claim in a negligence action from other claims against an estate. These decisions have held that a plaintiff in a negligence action is not entitled to have a reserve established for his benefit as the holder of an unliquidated or a contingent claim against an estate (Wallace v Ford, 44 Misc 2d 313, 318; Matter of Rosenfeld, 42 Misc 2d 117; Matter of Schwartz, 19 Misc 2d 203; Matter of Zutell, 213 NYS2d 290). Similar holdings have been made in other types of matters where the recovery appeared highly speculative in relation to the claim. In Matter of Baldwin (157 Misc 538), a suit against corporate directors for misfeasance, the court stated that a claim which was neither due nor ascertainable did not fall within the category of a claim against the estate that would entitle a claimant to a reserve as a creditor. The implicit rationale supporting these decisions is that to hold up the administration of an estate until a highly speculative action is resolved would cause delays in *482 administration that are unconscionably unfair to other persons interested in the estate.
The former position appears to flow from a generalization as to the highly speculative nature of addendum clauses in negligence complaints and the protracted delay that often existed in negligence cases being reached for trial. Rules of law are often a product of existing circumstances. The refusal of courts to set aside estate reserves to satisfy future negligence recoveries appears to be a concomitant of circumstances contemporaneous with those decisions that suggested that such a course would unduly delay the administration of estates. It is noted that the aforesaid reported decisions were rendered at a time when the backlog in the trial of negligence actions was much more critical than at present.
Conversely, there is authority to support the principle that, in appropriate cases, the reservation of estate assets on behalf of the plaintiff in a pending negligence action for a reasonable length of time constitutes a more evenhanded and equitable solution to the problem of conflicting interests in an estate (see Matter of Keisler, 41 Misc 2d 991; Matter of Biel, NYLJ, July 1,1983, p 14, col 2). As the court noted in Matter of Biel (supra), the assertion that the plaintiff in a negligence action was not the holder of a contingent or unliquidated claim against the estate appears to contradict the very definition of the terms “contingent” and “unliquidated”. Black’s Law Dictionary (5th ed) defines unliquidated as “[n]ot ascertained in amount; not determined; remaining unassessed or unsettled”, and the word “contingent” is defined as “[plossible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable”. In light of the above definitions, a pending negligence action would clearly seem to be both a contingent and unliquidated claim.
It is also suggested that the conclusion that reserves are inappropriate in negligence cases is also a product of most such claims being covered by liability insurance (see Powers, 1973 Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, 1983-1984 Pocket Part, SCPA 1804). This is a thesis without practical application. *483 Clearly, the issue of a reserve is one that should be considered only where the decedent’s liability insurance is unquestionably inadequate in relation to the minimum value of the claim. Since, in 1984, our statutes still require vehicles in New York to carry liability insurance in non-death cases of no more than the same $10,000 in protection for one person that was established by the Laws of 1959 (see L 1959, ch 775), clear inadequacy of coverage cases will inevitably be an increasingly frequent phenomena as inflation erodes a requirement established a quarter of a century ago.
It is the conclusion of this court that the striking of a balance between the rights of a party with a pending negligence claim and the rights of other persons interested in an estate is one which must be molded based upon the circumstances of each matter. Clearly, a plaintiff in a negligence action cannot be permitted to unduly paralyze an estate administration for unreasonable periods of time. Likewise, plaintiffs with legitimate claims should not be unfairly prejudiced by the perpetrator of a tort being deceased rather than alive. A legal representative of a defendant should not be able to inequitably immunize the tort-feasor’s personal assets from negligence claims to an extent greater than that to which the tort-feasor, if alive, could divest himself of his assets so as to limit his liability to available insurance coverage. If a living tort-feasor became entitled to a sum of money as a result of personal injuries he sustained, his recovery becomes part of his general assets subject to the claims of those upon whom he has inflicted a tort. No basis in law or logic can be discerned why the tort-feasor’s death should give his legal representative a greater capacity to minimize his assets than the decedent himself would possess.
The provisions of SCPA 1804 contain no inherent bar to the establishment of a reserve for a plaintiff in a negligence action. Moreover, there are circumstances where it would be manifestly inequitable and an abuse of discretion not to establish a reserve for the “contingent or unliquidated” negligence claim. Certainly, equity would dictate that a reserve be established for the plaintiff in a negligence action in those cases where all or many of the *484 following circumstances are present: the accounting proceeding is brought on within less than a year of decedent’s death; the negligence action is scheduled for trial on a date certain that is not unreasonably far into the future; the decedent’s insurance carrier has offered to pay the full amount of its policy; the amount plaintiff is seeking to recover is in excess of the insurance coverage and the claim appears on its face to have a value in excess of available insurance coverage; there are no equities supporting the need for a present distribution of the sum that is sought to be held in reserve, such as the dependence of a spouse or minor children on the estate assets for support; the beneficiaries of the estate do not reside in this jurisdiction thereby rendering any rights that the plaintiff in the negligence action might ultimately have against them individually under EPTL article 12 either problematical or illusory. In short, the court should balance the possible prejudice to decedent’s beneficiaries and other creditors against the possible prejudice to the plaintiff in the negligence action.
In this balancing test, among the additional factors that the court should consider are: the length of time that plaintiff has already had to pursue his claim; the diligence, or lack thereof, with which the claim has been prosecuted; whether there is any opposition to the application; the percentage of the estate sought to be held in reserve; the respective ages of the interested parties; the probability that the claimant will have a meaningful remedy against the beneficiaries individually if no reserve is established; and the extent to which the determinations that are required can be made by the court without becoming embroiled in prolonged and burdensome litigation which would be the equivalent of trying the negligence action itself.
The instant matter contains a number of circumstances which, when combined, present a strong argument in support of objectant’s request to establish a reserve. The merits and value of the negligence action are self-apparent from the offer of decedent’s carrier to pay the full amount of the policy. The maximum possible reserve and decedent’s liability insurance clearly totals less than the minimum *485 value of objectant’s claim against decedent. The division of the settlement sum between personal injuries and wrongful death requested by objectant involves an issue often determined by the Surrogate’s Court in an accounting proceeding.
Weight must also be given to the fact that objectant would likely suffer irreparable prejudice should the court decline to determine either the allocation question at this time or to establish a reserve equal to the amount that is allocated to decedent’s personal injuries. First, if the court leaves the issues undetermined and subsequently the entire recovery should be allocated to decedent’s wrongful death, plaintiff’s pursuit of the negligence action beyond insurance coverage would prove to be a pointless exercise in futility. Fundamental fairness dictates that before objectant and defendant are projected into the burdens of a trial, objectant have some idea as to whether success in that trial can yield a benefit and the scope of such possible benefit. Second, should the court permit the present distribution of the entire recovery to decedent’s distributees, who reside in Puerto Rico, subject to objectant’s rights directly against the distributees pursuant to EPTL article 12, objectant would probably be left with a hollow remedy that could not be a vehicle for meaningful relief. Once the funds are in the possession of distributees in a distant jurisdiction, in order to collect any recovery above insurance coverage, objectant would have to pursue a problematical remedy in a distant jurisdiction in a matter where the sum recoverable must necessarily be relatively small. For all of the foregoing reasons, it is concluded that the court should pass on the issue raised by objectant as to allocation of the recovery and exercise its discretion under SCPA 1804 to establish an appropriate reserve for a reasonable period of time.
The parties waived their rights to a hearing on the issue as to the proper allocation of the recovery between wrongful death and personal injuries. This issue is submitted on the papers filed. The statement in the death certificate that decedent was dead on arrival at the hospital is essentially uncontroverted. Objectant has argued that decedent survived for 20 minutes after the accident, but has offered no *486 proof which supports this argument or that decedent’s death was anything but instantaneous or virtually instantaneous. Objectant essentially relies on the statement in the bill of particulars of decedent’s legal representative in decedent’s negligence action in which it is alleged on behalf of decedent’s distributees that decedent’s “injuries resulted in agonizing excruciating pain which was endured by the plaintiff’s decedent from the time of their onset until his death”. Even if this “boiler plate” statement is given full credence, it cannot be read in splendid isolation. This same bill of particulars states that decedent was in his early forties and was earning “an annual wage of approximately $14,541.28”. In any event, a general statement in a pleading as to pain cannot alone establish that such predeath pain and suffering had significant scope with reference to a “death on arrival at the hospital” decedent, even when weighed against the sparse information as to the pecuniary expectation of decedent’s parents from him. While the information submitted indicates decedent had several decades of life expectancy and earned almost $15,000 per annum, no information is supplied as to the age of his parents or decedent’s relationship with them. Clearly, the life expectancy of decedent’s parents would be shorter than that of decedent and it is this shorter period that would have to be considered with reference to the parents’ pecuniary loss, not the longer life expectancy of decedent (see Franchell v Sims, 73 AD2d 1; Windus v Baker, 67 AD2d 833; Wishart v Andress, 46 AD2d 998). However, weight must also be given to pecuniary loss encompassing more than mere financial loss (see Gross v Abraham, 306 NY 525; Loetsch v New York City Omnibus Corp., 291 NY 308; Murphy v Erie R.R. Co., 202 NY 242; Matter of Singleton, 96 Misc 2d 169; Matter of Mairowitz, 90 Misc 2d 854; Grasso v State of New York, 177 Misc 690, affd 264 App Div 745, affd 289 NY 552). The court cannot create the record, but must decide the issues on what the parties have chosen to present. Upon the meager facts before the court, it is concluded that the value of the wrongful death loss far exceeds the value of decedent’s personal injuries. The maximum that can be allocated to personal injuries would be 20% of the recovery.
*487 That there are funeral expenses of $2,139 paid by petitioner personally is not disputed. Petitioner is entitled to be reimbursed. No issue is raised as to whether this expense should be totally allocated to personal injuries or wrongful death (cf. EPTL 5-4.3 with 11-3.3). This question not having been raised, the court will not address it. Accordingly, petitioner may reimburse himself proportionately from each aspect of the recovery. After allocating to personal injuries its proportion of the priority claims for funeral expenses, counsel fees and disbursements, it is determined that the 20% of the total net sum available for distribution is subject to any judgment of objectant in excess of available liability insurance. Petitioner should not be permitted to distribute this sum until objectant is given a reasonable opportunity to pursue his claim. The court regrets that the magnitude of the issue raised by objectant can yield such small rewards. Unfortunately, this is an unavoidable product of the total amount available being governed by the inadequacy of the minimum insurance coverage.
The only remaining issue is the period of time for which the reserve should be held. In light of the fact that decedent died approximately two years ago, letters issued approximately 21 months ago, and objectant has stated that he is in a position to expeditiously have the negligence action tried, and the relatively small size of the reserve, it is concluded that the reserve shall be held for a period not to exceed six months from the date of the entry of the decree to be settled herein. Petitioner shall hold the reserve in an interest-bearing estate account. Should objectant within the six-month period obtain and present an otherwise unsatisfied judgment to petitioner on the negligence action in a sum in excess of decedent’s insurance coverage, the petitioner shall utilize so much or all of the reserve, as the case may be, as is necessary to pay the judgment. The balance remaining, if any, shall be paid in equal shares to decedent’s two distributees. Absent any subsequent decree or order to the contrary, should petitioner not be presented with such a judgment within the six-month period, or the claim is not settled earlier, or should he prior thereto receive an acknowledged written notification that objectant is no longer making a claim to the reserve, he may *488 without further order of the court distribute the reserve in equal shares to decedent’s distributees. Of course, this determination is without prejudice to objectant’s right to seek an extension of the time that the reserve is to be held if such a course of action is appropriate. No surety bond is fixed since the amount of the reserve is less than $10,000 (see SCPA 801, subd 1, par [a]).
The relief requested on the application is otherwise granted as hereinabove modified. Counsel fees and disbursements are fixed and allowed in the sum requested and the net sum remaining in the portion of the recovery allocated to wrongful death is to be distributed in equal shares to decedent’s parents.