In the Matter of PAUL BIEL, Deceased. SEYMOUR PIENKNY, Appellant; DIANE CANTLEY et al., Respondents.

Second Department, September 17, 1984

APPEARANCES OF COUNSEL

*Pienkny & Sikowitz* (*Seymour Pienkny, pro se* of counsel), for appellant.

*Queller, Fisher, Block & Wisotsky* (*Mark R. Bower* and *Margaret B. Morin* of counsel), for respondents.

*Cohen & Warren, P.C.* (*Barry L. Warren, pro se* of counsel), for guardian ad litem.

OPINION OF THE COURT

NIEHOFF, J.

The issue presented on this appeal is whether the Surrogate of Suffolk County erred when he (1) concluded that the objectants, who had a personal injury action pending against the decedent prior to his death, had the status of contingent or unliquidated claimants entitling them to a reservation of estate assets under SCPA 1804, (2) directed

the executor to hold the remaining estate assets for a period of one year from the date of the decree, and (3) granted the objectants (hereinafter plaintiffs) leave to apply for an extension of such period at the expiration of the year. For the reasons that follow, we hold that a negligence action is a contingent or unliquidated claim within the purview of SCPA 1804 and that the Surrogate acted properly when he entered the aforesaid decree.

The facts are these.

For many years prior to his death, the decedent, Paul Biel, M.D., maintained a general practice of medicine in Suffolk County. On or about April 2, 1981, plaintiffs commenced a medical malpractice action against the doctor. The gravamen of the action is that the obstetrical delivery of the infant plaintiff by the doctor on May 20, 1971 was improperly conducted resulting in irreversible brain damage to said plaintiff.

On October 25, 1981, Dr. Biel died. At the time of his death he left an estate of approximately $137,000, the balance of which, after payment of two charitable bequests of $5,000 each, is to go to his widow. On December 4, 1981, Seymour Pienkny, Esq., was granted letters testamentary as executor of the estate. After the doctor's death, plaintiffs in the lawsuit successfully moved to substitute Dr. Biel's executor as a named defendant. In March, 1982, an amended summons and complaint in the action was served upon Southside Hospital, Seymour Pienkny, as Dr. Biel's executor, Martin Rosenblum, an intern, and Nancy Maer, a nurse.

At the time of the infant plaintiff's birth, Dr. Biel carried medical malpractice insurance in the face value of $100,000.

Pursuant to his administration of the estate, the executor sought an ex parte order of the Surrogate's Court permitting him to make monthly payments to the decedent's surviving spouse and sole beneficiary and directing advance payments of his commissions and legal fees. In his decision on that application, the Surrogate made reference to the unadjudicated medical malpractice action and stated that it was "not the type of proceeding which accords the plaintiff[s] herein the status of a contingent or unliqui-

dated claimant[s] as contemplated under SCPA § 1804". However, the Surrogate went on to say that the ends of justice would best be served if the executor were to commence an accounting proceeding seeking incidentally the same relief after having accorded proper notice to all of the interested parties including the plaintiffs in the medical malpractice action and the decedent's insurance carrier. Consequently, the executor's application was denied without prejudice.

Thereafter, the executor brought on the accounting proceeding suggested by the Surrogate. In that proceeding, the plaintiffs made a motion to hold the distribution of the estate in abeyance pending the outcome of the negligence litigation.

By decision dated June 14, 1983, the Surrogate reached a conclusion different from that contained in his earlier order. His revised opinion was that the negligence lawsuit was a contingent or unliquidated claim warranting a reservation of estate assets for a one-year period.

The Surrogate described the negligence claim involved as follows: "The gravamen of the medical malpractice action is that the obstetrical delivery of the movant by the decedent was improperly conducted resulting in irreversible brain damage to the movant due to the inadequate administering of oxygen. The movant, now 12 years of age, at last testing scored an IQ of 44 with a diagnosis of static encepholapathy. The movant's prognosis is poor and he will remain in need of constant medical and physical care for his entire life. The decedent carried medical malpractice insurance in the sum of $100,000.00 and his gross estate is in the approximate sum of $137,000.00. The negligence action commenced in Supreme Court Suffolk County is in the pre-trial discovery stage and the evidence adduced therefrom suggests that the movant's injuries were caused by negligence. Therefore, it is not speculation to conclude that this decedent's estate may be liable in that action for a sum in excess of the medical malpractice insurance coverage".

The court then went on to discuss the various judicial authorities who had considered the question of the nature of a negligence claim, referred to the fact that the issue of

whether a plaintiff in a negligence action is the holder of a contingent claim has never been decided by the appellate courts and, following the lead of Surrogate McGrath in *Matter of Keisler* (41 Misc 2d 991), directed a reservation of assets for one year with leave to plaintiffs to apply for an extension in the period of reservation.

As noted, *supra,* we affirm.

The statute we are called upon to interpret, namely, SCPA 1804 (subd 1), provides:

"Contingent or unliquidated claims; retention of assets for estate taxes.

"1. Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate or an outstanding bond, recognizance or undertaking upon which he was principal, surety, or indemnitor and on which at the time of his death the liability is still contingent or unliquidated, a claimant or a surety shall have the right to file with the fiduciary an affidavit showing the facts upon which the contingent or unliquidated liability is based and the probable amount thereof, and there shall be no distribution without reservation of such estate assets as the court shall determine to be adequate to pay the contingent or unliquidated claim when the amount thereof shall become due and payable. In fixing the amount to be reserved for payment of the claim the court may determine the value of any security or collateral to which the creditor may resort for payment of the debt and may thereafter direct the reservation if necessary of sufficient estate assets to make up the difference between the value of such security or collateral and the amount necessary to pay the contingent or unliquidated claim".

It will be seen that this section prescribes the method of dealing with claims on which the estate liability is contingent or with respect to which the total amount due will not be capable of ascertainment until some future date.

In applying SCPA 1804, the courts have long found negligence claims to be a source of difficulty. Those courts which have considered the question are sharply divided as to whether a plaintiff in a negligence action is entitled to a reservation of assets and it would appear, as the Surrogate

pointed up, that there are no appellate decisions in the State discussing the matter.

A few courts have held that an untried action in negligence does not constitute a debt of the estate until damages are fixed; that it is legally, practically and mathematically impossible to determine an amount to be reserved in any case where the claimant is the plaintiff in a negligence action; and that a contingent claim in negligence is not one calling for a reservation of estate assets (see, e.g., *Matter of Rosenfeld,* 42 Misc 2d 117; *Matter of Schwartz,* 19 Misc 2d 203; *Matter of Zutell,* 213 NYS2d 290).

Professor Paul J. Powers, in his Supplementary Practice Commentary to SCPA 1804, notes that those courts which have refused to authorize a reservation of assets in negligence cases seem to apply an approach which is "a pragmatic one, undoubtedly taking some thought of the exaggerated demands in negligence suits, the prevalence of insurance, the fact that the plaintiff looks mainly to the insurer, and the long delays in the trial of negligence actions" (Powers, 1973 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 58A, SCPA 1804, 1983-1984 Pocket Part, p 28). In sum, certain courts have taken the position that they will not hold up the administration of an estate until a highly speculative action, which may span years, is resolved. There is much to be said for that point of view.

Nevertheless, it must be recognized that fairness demands that plaintiffs with legitimate negligence claims not be frustrated in their recovery of damages solely by reason of the fact that the perpetrator of the tort is deceased rather than alive. Stated otherwise, since a tortfeasor's general assets are subject to the claims of those he has wronged during his lifetime, there is no sound reason why the tort-feasor's death should result in his legal representatives being able to reduce or eliminate those assets by distribution to the decedent's beneficiaries. Hence, several courts have concluded that the reservation of estate assets on behalf of the plaintiff in a pending negligence action for a reasonable length of time constitutes a more evenhanded and equitable solution to the problem of conflicting interests in an estate (see, e.g., *Matter of Keisler,* 41 Misc 2d 991, *supra; Matter of Vasquez,* 122 Misc 2d 479).

Of course, inasmuch as we are dealing with the interpretation of a statute our inquiry must concern itself with legislative intent. The statute provides for a reservation of assets where a claim is "contingent or unliquidated" (SCPA 1804, subd 1). As the Surrogate herein points out in his opinion: "Black's Law Dictionary, Fifth Edition, West Publishing Company, defines unliquidated as 'not ascertained in amount; not determined; remaining unassessed or unsettled', and the term contingent is defined as 'possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable' ". Those being recognized definitions of the words "contingent" and "unliquidated", it is difficult to escape from the conclusion that the Legislature intended that a negligence case, prior to judgment, is to be classified as either contingent or unliquidated, or both. A negligence claim bears the very characteristics described by the definitions. If the Legislature had intended to exclude negligence lawsuits from the type of claims covered by SCPA 1804 (subd 1), it could easily have used appropriate language to do so. Instead, it selected language of a nature which clearly encompasses negligence actions. Accordingly, it seems to us that we are bound to hold that the statute, as written, clothes a Surrogate with the authority to reserve estate assets in a negligence action.

Having decided that a negligence action is a contingent or unliquidated claim under SCPA 1804 (subd 1), the question that necessarily arises is whether a reservation of assets provided for by the section is mandatory or discretionary in nature. A fair reading of the statute leads to the conclusion that a reservation of some kind is mandatory once a claim covered by the statute is filed against an estate and it would appear that the Court of Appeals views the statute as mandatory where applicable.

In *Matter of Burrows* (283 NY 540), the trustees of one Ralph E. Prime, as the holders of a bond and mortgage which had been assumed by the decedent, William F. Burrows, sought payment of the past due bond and mortgage from the decedent's estate. The Surrogate dismissed the trustees' objections to the final account, which did not provide for payment, treating the claim as one contingent

upon the amount of a deficiency judgment which might be recovered in a foreclosure action. The Appellate Division affirmed (*Matter of Burrows,* 258 App Div 807), but the Court of Appeals held that "[t]he trustees are entitled to * * * a reservation of moneys" (*Matter of Burrows,* 283 NY 540, 543, *supra*). Judge Conway, writing for the majority of the court, construed the predecessor section of SCPA 1804 as being mandatory in nature, holding that: "In the meantime [i.e., pending the completion of the foreclosure action] there is the clear command of the statute that '* * * there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claim when the amount thereof is *finally* determined.' * * * Such reservation of moneys must be made by the executrix and it must necessarily continue until (a) the expiration of the emergency period, or (b) the lapse of reasonable time after the trustees have the right to foreclose the mortgage within the permissive provisions of the moratorium statutes and to continue the action to judgment and a sale of the premises. During that period the trustees [claimants] must proceed diligently under penalty of the loss of their right to the reservation of moneys to pay the claim" (*Matter of Burrows,* 283 NY 540, 545, *supra;* see, also, *Cohen v Cronin,* 39 NY2d 42, 49).

Consequently, we hold that some reservation of estate assets is required under the statute when a negligence claim is pending against the decedent unless, of course, the applicable insurance available is equal to or in excess of the claim, in which case no reservation is necessary. However, our holding to the effect that, with the exception noted above, a reservation of estate assets is mandatory in the face of a pending negligence claim should not be interpreted as an infringement upon the broad discretion of a Surrogate to fashion a remedy which will strike a proper balance between the respective rights of a decedent's beneficiaries and his contingent creditors. In determining the amount and duration of the retention, a Surrogate has extensive discretion to be based upon a thoughtful evaluation of all pertinent criteria.

With respect to the amount to be retained, a Surrogate should consider: (1) the probable value of the action

against the decedent which, in turn, hinges upon an examination of the merits of the claim, the amount sought by the claimant, the probability that the decedent's estate may be liable for a sum in excess of the liability insurance coverage, if any, and any settlement offers or demands made to date; (2) the collectability of a judgment, that is, whether the claimant will be able to pursue estate assets and recover them from the beneficiaries if no reserve, or an inadequate reserve, is established (EPTL 12-1.1); (3) the percentage of the estate assets for which reservation is sought; (4) the needs of the beneficiaries, such as a spouse and minor children, and the extent of their dependence on the estate assets for fulfillment of those needs; and (5) any other factors deemed probative in the particular case.

With respect to the length of time that the assets should be retained, the Surrogate should look to: (1) the length of time which has elapsed between the date of decedent's death and the accounting proceeding wherein the claim is filed; (2) the length of time that passed between accrual of the cause of action and commencement of the negligence lawsuit; (3) the diligence with which the negligence claim has been prosecuted; and (4) the position of the case on the Trial Calendar if the matter is on the calendar and, if not, plaintiff's chances of obtaining a trial preference.

In utilizing the various factors enumerated above to arrive at a reservation of assets, the Surrogate can seek to achieve an equitable balance between the rights of a party with a pending negligence claim and the rights of other persons interested in the estate.

In the case at bar, the Surrogate directed that all estate assets be reserved for a period of one year without prejudice to an application to extend the time. Based upon the facts and circumstances of this case as articulated, *supra,* it cannot be said that the Surrogate abused his discretion in ordering such a reservation of assets. That being so, the decree should be affirmed insofar as appealed from.

BRACKEN, J. P., RUBIN and EIBER, JJ., concur.

Decree of the Surrogate's Court, Suffolk County, dated August 24, 1983, affirmed insofar as appealed from, without costs or disbursements.