■ TRADITION NORTH AMERICA, INC., Appellant, v TIMOTHY SWEENEY, Respondent.—Order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered January 2, 1987, which denied plaintiff Tradition North America, Inc.'s motion for summary judgment, affirmed, without costs.

The facts are set forth in the dissenting opinion.

Each of the six notes upon which the present action is based by its terms holds open the possibility that defendant may repay the outstanding balance by earning bonuses. Indeed, defendant claims in his response to plaintiff's CPLR 3213 motion for summary judgment in lieu of a complaint, that the last three notes and to some extent the first three notes, have been satisfied by bonuses earned. To determine the amount payable on the notes, it is thus necessary to look beyond the notes themselves, as the dissenter has in fact done, to the employment agreement in order to determine the circumstances under which defendant would become entitled to a bonus, and to look as well at plaintiff's records respecting defendant's performance to determine if in fact defendant earned bonuses and, if so, in what amounts.

That it is necessary to resort to extrinsic material to establish the amounts payable on the notes at issue is a reflection of the fact that they are not instruments for the payment of money only and are, therefore, inappropriate for accelerated judgment pursuant to CPLR 3213. Although, undeniably,

these notes can be satisfied by monetary payment, they do not require payment by the defendant in monetary form. The defendant is given the option of performing work for his employer according to certain contractually established standards in order to satisfy the debt. Defendant, then, in executing these notes has not made an unconditional promise to pay a sum certain at a given time or over a stated period *(see, Maglich v Saxe, Bacon & Bolan,* 97 AD2d 19, 22). Rather, he has obligated himself to furnish consideration in the form of money and/or work for his employer. The notes may be viewed alternatively as evidencing a loan obligation or an advance on bonus and indeed, nonbonus, compensation.

When what purport to be notes have such a hybrid dimension they ought not to be considered instruments for the payment of money only *(see, Paine Webber Jackson & Curtis v Aronson,* 115 AD2d 355, 356). Indeed, they cannot be, because they do not, together with proof of failure to make *payment* according to their terms, constitute a prima facie case *(see, Seaman-Andwall Corp. v Wright Mach. Corp.,* 31 AD2d 136, *affd* 29 NY2d 617; *Interman Indus. Prods. v R. S. M. Elecron Power,* 37 NY2d 151). By demonstrating a failure of monetary payment, one does not demonstrate that notes of the sort here involved, which do not call exclusively for monetary payment, have not been otherwise discharged. Concur—Murphy, P. J., Kassal and Smith, JJ.

Sullivan, J., dissents in a memorandum as follows: I would reverse and grant summary judgment. Plaintiff, Tradition North America, Inc., appeals from the denial of its motion for summary judgment in lieu of complaint (CPLR 3213) on six promissory notes executed by defendant Timothy Sweeney, on which a balance is due of nearly $80,000 in principal plus accrued interest.

On September 10, 1984, Tradition hired Sweeney as a currency broker at an annual salary of $100,000. During his employment Sweeney borrowed a total of $103,000 from Tradition, in consideration for which he executed six promissory notes, each providing for the unconditional repayment of principal, plus interest at a specified rate. Each note expressly provided that it shall be repaid in full "without counterclaim, setoff, deduction [or] defense"; that it "may not be changed or terminated orally"; and that the principal and accrued interest shall become immediately due and payable in full on the last day of Sweeney's employment with Tradition.

Sweeney concedes that he signed the notes and received

$103,000 from Tradition. It is also conceded that a total of $33,000 was deducted from Sweeney's paychecks while he was employed by Tradition, thereby reducing the total principal due to $70,000. Sweeney voluntarily left Tradition's employ on June 30, 1986 to accept a similar position with another employer in the same industry. As of that date, on which the notes by their terms became due, $9,445.97 in interest had accrued for a total balance of $79,445.97. When he left Tradition, Sweeney agreed to repay $45,000 within a few days of starting with his new employer and the balance by the end of July 1986. He failed to do so.

In September 1986, Tradition moved for summary judgment in lieu of complaint on the notes. In response, Sweeney conceded that he had signed the notes, which he had not repaid, received $103,000 from Tradition and had voluntarily left its employ. Nevertheless, and relying solely on parol evidence, he asserted that he had "counterclaims and defenses", none of which allege fraud or mutual mistake, that preclude an award of summary judgment.

Sweeney claimed that under the terms of his employment agreement with Tradition the first loan of $50,000 was interest free and that he was "guaranteed minimum bonus compensation of $15,000.00, regardless of profits earned by the company as a result of my efforts." He also claimed that the balance of that promissory note and the next two notes executed by him was somehow discharged, and that the last three notes were receipts for "bonus compensation" he had already earned under his employment agreement. Finally, Sweeney claimed that the amount he owed to Tradition on his notes should be offset by his "counterclaim for the sum of $1,200.00 representing car payments for April, May and June 1986, which was never paid by [Tradition] pursuant to agreement and the sum of $6,600.00 representing reimbursement for expenses". It should be noted that none of these counterclaims and defenses was supported by any documentary evidence whatsoever.

On September 10, 1984, the day Sweeney joined Tradition, he signed an employment agreement which expressly provided, "This instrument contains the entire Agreement of the parties [and] may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any such change is sought." The agreement specifically set forth Sweeney's compensation at $100,000 per annum. It does not contain any provision for the payment of a "guaranteed minimum bonus compensation of $15,000.00". It

does provide that Sweeney would be eligible for a bonus, but only if his annual "production figures exceed[ed] a ratio of 3.3:1 vs. income." Thus, to be eligible for a bonus, Sweeney had to produce $330,000 in profits for Tradition in a fiscal year—that is, 3.3 times his annual salary of $100,000. Sweeney never earned a bonus.[1]

While conceding his unconditional execution of the notes which are now due because of his separation from Tradition's employ, and failure to repay, Sweeney alleges that he is relieved of his obligations because of certain agreements he had with Tradition. Unable to support his assertions with any writing, Sweeney attempts to misread a May 5, 1986 memorandum from Tradition's president, David Pinchin, to Tradition's vice-president in charge of finance, James Allan, in which Pinchin authorized Allan to issue another interest-bearing loan to Sweeney and to secure from Sweeney the same form of promissory note evidencing his prior loans. Sweeney, incredibly, suggests that this memorandum somehow discharged his obligations under the first three promissory notes and also demonstrates that the loans he received in exchange for his last three notes were actually cash advances on a bonus he already had earned. The memorandum states:

"Tim Sweeney

"As discussed, Tim should receive a new interest bearing loan of $25,000 on the same terms as previous financing. He should sign the same documentation.

"However, between now and the end of September 1986 he will cease to make payments on either loan.* It is understood that any bonus (and Tim is on the track for a bonus) should be, after taxes, applied against the loans.

"/s/DP

"* This will be formally reviewed then."

Contrary to Sweeney's claim that this memorandum somehow discharged him from his obligations, it clearly states that the $25,000[2] he received was indeed a loan and not a cash advance on bonuses, was interest bearing, and that, while there would be a temporary suspension of payroll deductions, he remained obligated to repay the notes.[3] Sweeney's con-

---

1. Sweeney's production figures while he was employed by Tradition were $156,519 for the fiscal year 1984/1985 and $246,264 for 1985/1986.

2. In exchange for the $25,000, Sweeney executed three notes, two for $8,500 and one for $8,000 and each payable at 8.5%.

3. Although the memorandum also states that Sweeney was "on the track for a bonus" in May 1986, Sweeney never earned the bonus because at

cocted story that the last three loans actually were bonus payments is further belied by the fact that taxes were never withheld. Tradition withholds taxes when it pays bonuses to employees who earn them. His claim that the handwritten terms of the last three notes were not completed until after he executed them is, even if true, of little avail since the printed portions clearly reflect that the agreement is a promissory note, and contain the provisions, such as the bar against oral changes, which contradict most of Sweeney's claims. As already noted, Sweeney does not deny receipt of the consideration for which these instruments were given.

New York courts have consistently refused to allow the use of parol evidence to vary or contradict the express terms of a promissory note. As this court recently stated, "[T]he law is clear that where, as is the situation here, there is an unconditional written promise to pay, the parol evidence rule operates, absent fraud or mutual mistake * * * to exclude proof of all prior or contemporaneous negotiations between the parties, as well as of any extraneous oral agreement, which is intended to contradict or modify the terms of the instrument." *(Manufacturers Hanover Trust Co. v Margolis,* 115 AD2d 406, 407, citing cases.)

Moreover, where, as here, the promissory note contains a merger clause expressly providing that it cannot be changed or terminated orally, General Obligations Law § 15-301 prohibits any modification except by a written instrument signed by the party to be charged. Thus, for example, where a guarantee provided that it was to " 'continue in full force and effect until written notice of its discontinuance' ", the plaintiff's motion for summary judgment in lieu of complaint was granted despite defendant's offer of parol evidence of an agreement to terminate the guarantee. *(Nanuet Natl. Bank v Rom,* 96 AD2d 898.)

Sweeney is similarly barred by the terms of the notes from asserting counterclaims and defenses in this action. Each note expressly provided that "[a]ll amounts payable in respect of this note shall be paid without counterclaim, setoff, deduction, defense, abatement, suspension or deferment." Nevertheless, without any factual support, and contrary to the terms of both the documents he signed and the records Tradition maintains in the ordinary course of its business, Sweeney asserts that Tradition owes him a guaranteed minimum bonus of $15,000,

the time he voluntarily left Tradition's employ on June 30, 1986 he had not reached his minimum production goal.

an additional bonus of $25,000 which he allegedly earned, customer-entertainment expenses of $6,600, and three months of car payments totaling $1,200. Under New York law Sweeney is barred by the express terms of the notes from asserting these counterclaims. *(See, St. John Assocs. Engrs. v Chase Architectural Assocs.,* 106 AD2d 743; *Chemical Bank N. Y. Trust Co. v Batter,* 31 AD2d 802.) In a recent case, *PGA Mktg. v Windsor Plumbing Supply* (124 AD2d 576), the Second Department affirmed an award of summary judgment in lieu of complaint on two promissory notes executed by the defendant in partial payment for plumbing supplies. While recognizing that the defendant's argument that some of the goods ordered were not delivered, that other goods delivered were of second-grade quality or were discontinued materials, and that the plaintiff did not bill the goods at the discounted prices to which they had agreed "could serve as the basis for a claim of breach of contract or breach of warranty", the court held that they could not defeat the plaintiff's entitlement to summary judgment since "the promissory notes contained explicit waivers of the right to assert any defense, offset or counterclaim against the notes." *(Supra,* at 577.)

Furthermore, where the counterclaims are unliquidated and independent of the promissory notes sought to be enforced, and not themselves susceptible to summary disposition, New York Courts have consistently held that such counterclaims cannot defeat, or offset, a motion for summary judgment under CPLR 3213, even where the counterclaims are not expressly barred by the terms of the instrument. *(See, Maglich v Saxe, Bacon & Bolan,* 97 AD2d 19; *Parry v Goodson,* 89 AD2d 543, 544; *Diversified Indus. v Casa Del Tesoro Corp.,* 79 AD2d 534.) Thus, Tradition would still be entitled to summary judgment as a matter of law. Sweeney conceded that he executed the six notes, received $103,000 from Tradition in exchange therefor, and that he has failed to repay Tradition the balance due on them. Tradition thus met its burden of establishing a prima facie case under CPLR 3213. "It is incontestable that plaintiff would prove a prima facie case by proof of the note and a failure to make the payments called for by its terms." *(Seaman-Andwall Corp. v Wright Mach. Corp.,* 31 AD2d 136, 137, *affd* 29 NY2d 617.)

Once plaintiff established execution of the instrument for the payment of money only and default in payment, it was "incumbent upon defendant to come forward with proof of evidentiary facts showing the existence of a triable issue with respect to a bona fide defense". *(Gateway State Bank v Shan-*

*gri-La Private Club,* 113 AD2d 791, 792, *affd* 67 NY2d 627.) Sweeney failed to meet his burden. He has not come forward with proof of evidentiary facts showing the existence of a defense. Instead, he relies upon unsubstantiated, conclusory assertions which are insufficient to defeat a motion under CPLR 3213, as a matter of law. *(Ihmels v Kahn,* 126 AD2d 701.)

Sweeney claims that Tradition owes him customer-entertainment expenses of $6,600. Tellingly, he has failed to produce any American Express bills or other records showing that he incurred any such expense. More important though, as this record discloses, he was, in fact, reimbursed for all customer-entertainment expenses.[4] Sweeney also claims that Tradition agreed to pay three months of car payments totaling $1,200, but fails to produce any note, letter or memorandum supporting this assertion. In any event, none of these allegations is sufficient to defeat Tradition's claim for payment on the notes. He further claims that he was guaranteed a minimum bonus of $15,000 when he was hired by Tradition, but the signed employment agreement does not provide for a guaranteed minimum bonus payment of $15,000, or any other specific amount. As already noted, it only provides for the payment of a bonus if Sweeney's production figures exceed income by a ratio of 3.3:1.[5] Sweeney is barred from offering parol evidence to alter or vary the terms of that agreement.

Finally, Sweeney claims that he was told that the first promissory note would be interest free, and thus contends that there was fraud. Such an unsubstantiated allegation is insufficient as a matter of law to defeat summary judgment. *(Hogan & Co. v Saturn Mgt.,* 78 AD2d 837.) Moreover, that assertion is barred by the parol evidence rule, and belied by the record evidence and by the express provision in each promissory note for the payment of interest at a specified rate.

Sweeney is also liable for attorney fees, costs and expenses in an amount to be determined on an assessment. In each of

---

4. The record contains Tradition's canceled check paying Sweeney's customer-entertainment expenses incurred in May and June 1986, the last two months of his employment, as well as Sweeney's June 1986 application for reimbursement and credit card receipts.

5. Sweeney himself concedes that he had to meet certain performance requirements to be eligible for a bonus. Although he understates (by $30,000) the minimum annual profits he had to produce in order to become eligible for a bonus (from $330,000 to $300,000), the record shows that he never produced more than $250,000 in profits in any fiscal year. Thus, even under Sweeney's own formula, he was not entitled to any bonus.

the last three notes executed he expressly agreed to pay all of Tradition's expenses, including, without limitation, counsel fees and court costs, incurred in enforcing the note. Provisions of this kind are specifically enforced under New York law. *(See, Manufacturers & Traders Trust Co. v Franz,* 46 AD2d 161, 163; *Bank of New York v Clavier Corp.,* 29 AD2d 927.) Moreover, this court has specifically enforced such a promissory note provision in granting summary judgment pursuant to CPLR 3213. *(Parry v Goodson,* 89 AD2d 543, *supra; see also, Torres & Leonard v Select Professional Realties,* 118 AD2d 467.)

The majority has ignored entirely the various arguments as to the existence or nonexistence of a factual issue, and has relied, instead, on a premise that was never even advanced in opposition to the motion—that the six promissory notes are not instruments for the payment of money only. In any event, CPLR 3213 is an appropriate remedy in this case.

Under CPLR 3213 a negotiable instrument is one for the payment of money only. All six promissory notes at issue are negotiable instruments as defined by Uniform Commercial Code § 3-104, since each was signed by the maker, Sweeney (subd [1] [a]); contains an unconditional promise to pay a sum certain in money only and no other promise (subd [1] [b]); is payable at a definite time—the last day of Sweeney's employment with Tradition (subd [1] [c]); and is payable to Tradition's order (subd [1] [d]).

Contrary to Sweeney's argument, there is no need to refer to any other document outside the notes themselves to define a default. As already noted, all six notes, by their express terms, became due on the last day of his employment with Tradition, which, concededly, was June 30, 1986. Nor is it necessary, as the majority contends, to refer to any other document to determine the amounts payable on the notes at issue. Sweeney's unsupported assertion that he earned bonus compensation under his employment agreement does not alter the fact that the promissory notes, by their terms, are instruments for the payment of money only.

Accordingly, the order denying Tradition's motion for summary judgment should be reversed, the motion granted and the matter remanded for an assessment as to attorney fees, costs and expenses.