James Horvath, Plaintiff,

against
High Peaks Sand, Gravel & Minerals, LLC and PATRICK VAN BUSKIRK as Executor of the Estate of Keith Van Buskirk, Defendants.


904568-16

APPEARANCES:
Menter, Rudin & Trivelpiece, P.C.
Attorneys for Plaintiff
(Teresa M. Bennett and Anna W. Richards, of counsel)
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498
Girvin & Ferlazzo, P.C.
Attorneys for Defendants
(Salvatore D. Ferlazzo and Mikhail A. Shah, of counsel)
20 Corporate Woods Boulevard
Albany, New York 12211


Richard M. Platkin, J.

This is an action brought by plaintiff James Horvath to, among other things, collect on a promissory note that was executed by defendant High Peaks Sand, Gravel & Minerals, LLC ("High Peaks") and unconditionally guaranteed by Keith Van Buskirk ("Guarantor"), a member of High Peaks. Following the commencement of this action, the Guarantor died, and his son, [*2]Patrick Van Buskirk, was appointed as the executor of the Guarantor's estate ("Executor") and substituted as a defendant herein.
Pending before the Court is plaintiff's motion for summary judgment on his first cause of action, which seeks a money judgment for amounts due and owing pursuant to the note and guaranty, and for partial summary judgment as to liability on his fourth cause of action, which seeks the recovery of attorney's fees. Plaintiff also moves for the dismissal of defendants' affirmative defenses. Defendants oppose the motion. 
BACKGROUND
A. The Original Transaction
On or about March 18, 2011, plaintiff loaned High Peaks the sum of $250,000, and High Peaks executed and delivered to plaintiff a note dated March 18, 2011 ("Original Note"). Under the note, High Peaks was obliged to pay plaintiff $250,000, together with 12% interest, beginning on October 1, 2012 and continuing until the maturity date of September 1, 2013. 
The Original Note did not call for fixed payments, but rather required High Peaks to pay plaintiff one-half of the net proceeds from the sale or lease of certain mineral rights until the loan was repaid (see Compl., Ex. A). High Peaks also agreed to make payments on the loan from the proceeds of the sale of certain land located in the Town of Moriah, Essex County (see id.). 
The Original Note was secured by a Mortgage of the same date. Under the Mortgage, plaintiff was granted a security interest in the mineral rights on about 72,000 acres of land in Essex and Clinton Counties, as well as a first mortgage on the Moriah parcel (see id., Ex. B).
Also on March 18, 2011, High Peaks executed and delivered to plaintiff a Royalties Agreement, which was amended by an Addendum dated April 8, 2011 (collectively, "Original Royalties Agreement") (id., Ex. C). In order "to induce [plaintiff] to provide the [l]oan," High Peaks agreed to pay plaintiff 10% of the gross proceeds generated from the Essex and Clinton land (id.).
Finally, the Guarantor executed and delivered to plaintiff a Guaranty dated March 18, 2011 (see id., Ex. D). Under the terms of this personal Guaranty, the Guarantor "unconditionally guarantee[d] . . . the prompt payment of the [Original Note] when due, at maturity, by acceleration, or otherwise," and he agreed to be "jointly and severally liable" therefor (id.).
B. Modification Agreement
On or about June 20, 2013, plaintiff and High Peaks entered into a "Mortgage, Mortgage Note and Royalties Agreement Modification Agreement" (hereinafter, "Modification Agreement"), which amended certain terms of the Original Note, Mortgage and Original Royalties Agreement (collectively, "Loan Documents").
The Modification Agreement amended the Original Note and Mortgage by compounding past due interest, which yielded a new principal balance of $280,000, and by providing for the payment of 12% interest on the loan on and after September 1, 2013 (see id., Ex. E ["Note"], ¶ 1). The Modification Agreement also required High Peaks to make monthly installment payments on the loan in specified amounts beginning on October 1, 2013 and continuing each month through September 1, 2015, when the outstanding balance was due and payable (see id., ¶ 2). All other terms of the Original Note and Mortgage remained "unchanged" and continued "in full force and effect" (id., ¶ 3). Finally, the Original Royalties Agreement was modified to increase the royalty rate to 20% of the gross proceeds (id., ¶¶ 4-5 ["Royalties Agreement"]). 
[*3]C. Subsequent Events
The Note matured on September 1, 2015, thereby triggering High Peaks' obligation to pay the entire outstanding balance (see id., ¶ 2). According to plaintiff, he and the Guarantor "discussed a possible settlement in or around April and/or May of 2015 which would require certain [further] modifications to the Loan Documents," and they exchanged several emails in the course of such negotiations (Horvath Aff., ¶¶ 7-8). However, plaintiff avers that the settlement terms proposed by the Guarantor "were not acceptable," and "[t]he Loan Documents were not modified [as a result of] the settlement discussions" (id., ¶¶ 9-10).
On April 26, 2016, plaintiff sent a letter to defendants "demand[ing] immediate payment in full of all sums due under the Loan Documents" (Compl., Ex. F).[FN1]
Defendants failed to repay the loan in accordance with the demand (see Horvath Aff., ¶ 11). The principal balance allegedly due under the Note is $276,449.32, plus accrued interest of $67,399.28, together with per-diem interest of $90.89 from and including July 23, 2016 (see id., ¶ 12).
D. This Action
Plaintiff commenced this lawsuit on August 8, 2016. The Complaint alleges four causes of action. As is relevant here, the first cause of action seeks to recover under the Note and Guaranty (see Compl., ¶¶ 9-21), and the fourth cause of action seeks the recovery of attorneys' fees and other legal expenses incurred in collecting the debt (see id., ¶¶ 31-37).[FN2]

Defendants joined issue in January 2018 by filing a Verified Answer ("Answer") that admits High Peaks' execution and delivery of the Loan Documents and their failure to repay the Note or Guaranty (see Ans., ¶¶ 3, 5, 8-9). Defendants allege, however, that "payments to [p]laintiff have been made prior to the date of this [A]nswer" (id., ¶ 9), and they interpose the following affirmative defenses: (1) the interest rate required under the Loan Documents exceeds New York's usury laws; (2) there was "an accord and satisfaction between the parties on different and new terms and conditions," as evidenced by certain "email chains between the parties dated May 17, 2015, May 27, 2015 and May 28, 2015"; (3) the Complaint should be dismissed under the doctrines of waiver and/or estoppel; (4) some or all of plaintiff's claims are barred because he acted in bad faith and has unclean hands; (5) the Loan Documents are unenforceable because plaintiff failed to fulfill one or more of his obligations thereunder; and (6) the Complaint fails to state a cause of action (id., ¶¶ 20-28).
Following very limited paper discovery, plaintiff filed the instant motion. Defendants [*4]oppose the motion, contending that there are triable issues of fact as to their payments and whether there was an accord and satisfaction. Defendants further argue that the motion is premature.
DISCUSSION
To obtain summary judgment in a collection action such as this, the plaintiff must proffer "evidence of the executed promissory note and guarantee, as well as [defendants]' default in payment" (Creative Culinary Concepts, LLC v Sam Greco Constr., Inc., 134 AD3d 1294, 1295 [3d Dept 2015]; see County of Greene v Chalifoux, 127 AD3d 1316, 1317 [3d Dept 2015]; Overseas Private Inv. Corp. v Nam Koo Kim, 69 AD3d 1185, 1187 [3d Dept 2010], lv dismissed 14 NY3d 935 [2010]). "Once the plaintiff submits evidence establishing a prima facie case, the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue of fact with respect to a bona fide defense" (Nunez v Channel Grocery & Deli Corp., 124 AD3d 734, 735 [2d Dept 2015] [citations omitted]; Creative Culinary Concepts, 134 AD3d at 1295; JPMorgan Chase Bank, N.A. v Galt Group, Inc., 84 AD3d 1028, 1029-1030 [2d Dept 2011]). 
A. Plaintiff's Prima Facie Case
Plaintiff submits, among other things, the Loan Documents, the Complaint and a moving affidavit that "incorporate[s] the allegations" of the Complaint (Horvath Aff., ¶ 3). This proof demonstrates that defendants executed and delivered the Note and Guaranty to plaintiff (see Compl., ¶¶ 4-8; Exs. A-E; Ans., ¶¶ 3, 5, 12, 17) and that they failed to pay the outstanding balance following due demand (see Compl., ¶¶ 9-19; Ex. F; Ans., ¶ 9; Horvath Aff., ¶ 11). 
The foregoing facts "establish[ plaintiff's] prima facie entitlement to judgment as a matter of law" on his claim for recovery under the Note and Guaranty, thereby shifting the burden to defendants "to establish by admissible evidence the existence of a triable issue of fact with respect to a bona fide defense" (JPMorgan Chase Bank, 84 AD3d at 1030 [internal quotation marks and citation omitted]; see Creative Culinary Concepts, 134 AD3d at 1295).
The same proof suffices to demonstrate plaintiff's prima facie entitlement to an award of legal fees and costs. A prevailing party is entitled to an award of attorneys' fees where, as here, such an award is "authorized by agreement between the parties" (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]; see TAG 380, LLC v ComMet 380, Inc., 10 NY3d 507, 515-516 [2008]; Burton F. Clark, Inc. v Hillside Cos., Inc., 121 AD3d 1236, 1237 n 2 [3d Dept 2014]; see Compl., Ex. A, ¶ 13; id., Ex. D).
B. Defendants' Defenses
Plaintiff also moves for the dismissal of the defenses alleged in defendants' Answer (see CPLR 3211 [b]). The Answer asserts the defense of payment (see id., ¶ 9) and alleges six affirmative defenses (see id., ¶¶ 20-28).
Initially, defendants' boilerplate sixth affirmative defense of failure to state a claim must be dismissed, inasmuch as plaintiff has demonstrated his prima facie entitlement to judgment as a matter of law (see La Salle Bank N.A. v Kosarovich, 31 AD3d 904, 906 [3d Dept 2006]).
Further, plaintiff has established that defendants' first affirmative defense of usury must be dismissed. Neither a limited liability company such as High Peaks nor a member-guarantor of such a company may raise the defense of usury (see General Obligations Law ["GOL"] § 5-521 [1]; Limited Liability Company Law § 1104 [a]; Fred Schutzman Co. v Park Slope Advanced Med., PLLC, 128 AD3d 1007, 1008 [2d Dept 2015], lv denied 26 NY3d 903 [2015]).
The equitable defenses of waiver and estoppel (third affirmative defense) and unclean hands (fourth affirmative defense) are inapplicable to this action at law seeking the recovery of money damages (see Greco v Christoffersen, 70 AD3d 769, 771 [2d Dept 2010]; Manshion Joho Ctr. Co., Ltd. v Manshion Joho Ctr., Inc., 24 AD3d 189, 190 [1st Dept 2005]). And to the extent that this action can be deemed as also sounding in equity due to plaintiff's claim for an accounting (see Compl., ¶¶ 22-28; see e.g. Doo Soon Chung v Doo Nam Kim, 170 AD2d 232, 232-233 [1st Dept 1991]), defendants' equitable defenses are pleaded as mere conclusions of law unsupported by particularized factual allegations (see Bruno v Sant'Elia, 52 AD3d 556, 557 [2d Dept 2008]; Kronish Lieb Weiner & Hellman LLP v Tahari, Ltd., 35 AD3d 317, 319 [1st Dept 2006]; see also Blueberry Invs. Co. v Ilana Realty, 184 AD2d 906, 907 [3d Dept 1992]). 
The fifth affirmative defense, alleging plaintiff's failure to fulfill one or more of his obligations under the Loan Documents, is not pleaded with the specificity required by CPLR 3015 (a), and, in any event, is wholly conclusory.
Accordingly, plaintiff is entitled to dismissal of the first, third, fourth, fifth and sixth affirmative defenses alleged in the Answer.[FN3]
Defendants are thus left with two defenses: (1) payment; and (2) accord and satisfaction. 
1. Payment
Preliminarily, plaintiff emphasizes that defendants have failed to allege payment as an affirmative defense. While the defense of payment is not specifically listed as an affirmative defense in defendants' Answer (cf. CPLR 3018 [b]), the factual allegations of the Answer (see Ans., ¶ 9) accorded plaintiff adequate notice of the defense (see 534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick, 90 AD3d 541, 542 [1st Dept 2011]). Further, plaintiff has had a full opportunity to address this defense in his moving and reply papers. Under the circumstances and given the lack of any demonstrated prejudice, the Court will address the merits.
While conceding that the Note has not been paid in full, defendants assert that "payments to [p]laintiff have been made prior to the date of this [A]nswer" (Ans., ¶ 9). In this regard, defendants submit the affidavit of the Executor, who avers that the Note "was not paid off fully but many payments were made by High Peaks," as particularized in Exhibit C to his affidavit (Van Buskirk Aff., ¶¶ 14-15).
According to Defendants' Supplemental Response to Production of Documents, which is annexed to the Executor's affidavit as Exhibit C, High Peaks made eight payments to plaintiff in various amounts and at various times from December 2009 through April 2016, totaling $5,065 (see id., Ex. C, Response No. 1, p. 5). However, the demand to which this response was given "concern[ed] the Royalties Agreement and any payments made in connection therewith" (id.). Moreover, the Note called for monthly installment payments of specified amounts on specified dates,[FN4]
and the payments cited by the Executor do not correspond in any way to the obligations [*5]prescribed by the Note. In contrast, the Royalties Agreement called for High Peaks to pay royalties on a percentage basis as the gross proceeds from particular transactions were realized (see Compl., Ex. C, ¶ 1; see also id., Ex. E, ¶¶ 4-5). Thus, it is apparent that the irregular course of payments cited by the Executor were royalty payments made by High Peaks pursuant to the Royalties Agreement and not installment payments made pursuant to the Note. 
Defendants therefore have failed to raise a triable issue of fact with respect to their defense of payment (see Digestive Disease & Nutrition Ctr. of Westchester, LLP v Abrams, 112 AD3d 778, 779 [2d Dept 2013]; Tradition N. Am. v Sweeney, 133 AD2d 53, 58-59 [1st Dept 1987]; Feinstein v Levy, 121 AD2d 499, 500 [2d Dept 1986]). Accordingly, the defense of payment is rejected insofar as defendants claim to have reduced the principal balance of the Note below the $276,449.32 figure alleged by plaintiff in the Complaint.
2. Accord and Satisfaction
Defendants' remaining defense is accord and satisfaction. Defendants allege, as a second affirmative defense, that the parties "entered into a modification of [the Loan Documents] which resulted in accord and satisfaction of the terms and conditions of said Agreements" (Ans., ¶ 22). According to defendants, "[p]laintiff agreed to release [them] from the Note and Mortgage and agreed to the substitution of 24,000 acres as identified in email chains between the parties dated May 17, 2015, May 27, 2015 and May 28, 2015, copies of which are annexed" to the Answer (id., ¶ 23 & Ex. 1).
"The party asserting the affirmative defense of accord and satisfaction must establish that there was a disputed or unliquidated claim between the parties which they mutually resolved through a new contract discharging all or part of their obligations under the original contract"
(Huimin Sun v Cai, 146 AD3d 760, 762 [2d Dept 2017] [internal quotation marks and citation omitted]; see Rose Inn of Ithaca, Inc. v Great Am. Ins. Co., 75 AD3d 737, 739 [3d Dept 2010], lv denied 15 NY3d 713 [2010]; Ber v Johnson, 163 AD2d 817, 817 [4th Dept 1990]).
"Inasmuch as an accord and satisfaction constitutes a contract, it must be shown that the parties set forth the essential elements thereof and had a meeting of the minds to resolve the disputed claim" (Rose Inn of Ithaca, 75 AD3d at 739, citing Sorrye v Kennedy, 267 AD2d 587, 589 [3d Dept 1999]; Altamuro v Capoccetta, 212 AD2d 904, 904 [3d Dept 1995], lv denied 85 NY2d 808 [1995]). Thus, defendants must establish the parties' mutual assent and intention to be bound by the alleged new modification agreement (see Kowalchuck v Stroup, 61 AD3d 118, 121 [1st Dept 2009]). The test for contract formation is a purely objective one (see Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399-400 [1977]).
Even assuming that the doctrine of accord and satisfaction has any applicability to [*6]plaintiff's claim under the Note and Guaranty,[FN5]
the Court concludes, for the reasons that follow, that the proof adduced by plaintiff in support of his motion sufficiently demonstrates, prima facie, the absence of a new contract that discharged all or part of defendants' obligations under the Loan Documents, and defendants have failed to raise a triable issue of fact to substantiate this affirmative defense in their opposition papers.
In his moving affidavit, plaintiff avers that he and the Guarantor "discussed a possible settlement in or around April and/or May 2015 which would require certain modifications to the Loan Documents," and that the string of emails from May 2015 annexed to the Answer "were exchanged in the course of [those] settlement discussions" (Horvath Aff., ¶¶ 7-8). According to plaintiff, "[t]he settlement terms proposed by [the Guarantor] were not acceptable to [plaintiff], and [they] never reached an agreement. The Loan Documents were not modified following the settlement discussions, and the proposed settlement terms were not carried out" (id., ¶¶ 9-10).
Thus, plaintiff argues that the modifications discussed in the May 2015 email string ultimately did not result in a settlement being reached, and no modifications to the Loan Documents were reduced to writing and executed the parties. In this connection, plaintiff observes that the Loan Documents prohibit modifications other than through a signed writing
(see Compl., Ex. A, ¶ 14; id., Ex. C, p. 2; GOL § 15-301 [1]). 
In opposition, defendants maintain that the May 2015 email string, entitled "Mortgage Settlement Proposal," were not settlement negotiations, as claimed by plaintiff, but "a continuation of prior direct communication between the parties that result[ed] in modifications to improve [plaintiff's] position in return for the delay in final payment" (Van Buskirk Aff., ¶ 20 & Ex. D; see Ans., Ex. 1). 
In particular, the Executor points to the portion of the email string in which the Guarantor reiterates the five points of plaintiff's earlier counter-proposal, all of which were subscribed as "AGREED" to by the Guarantor on May 17, 2015 (Van Buskirk Aff., ¶¶ 21-27; see Ans., Ex. 1, p. 2). The Executor further avers that, while High Peaks initially tried to increase its commission to 50% in response to plaintiff 's counter-proposal, the Guarantor emailed plaintiff the next day to advise that he "'will agree'" to the sliding scale proposed by plaintiff, to which plaintiff responded "'Okay good, thereby accepting the offer" (Van Buskirk Aff., ¶¶ 27-28, quoting Ans., Ex. 1). Finally, while the Executor acknowledges that "the parties never got around to modifying [*7]the [Loan D]ocuments," he avers that "High Peaks relied on [plaintiff's] written email which is considered to be a binding written modification," and plaintiff's then-counsel "did not notify High Peaks that the written modification was invalid" (Van Buskirk Aff., ¶ 28).
The Court concludes that proof adduced by defendants falls short of evidencing a contractual agreement to modify the Loan Documents. The subject of the email string was a "[s]ettlement [p]roposal" (Ans., Ex. 1), and, in emphasizing plaintiff's statement of "Okay good" in the May 28, 2015 email, defendants ignore the rest of his message. In fact, the entire email from plaintiff reads as follows: "Okay good. have your attorney draw up the paperwork. Do you [have] the map for the tax map No.s for the 24,000 acres?" (id., p. 1). 
It is apparent from the foregoing language that plaintiff clearly expressed his intention that any modification of the Loan Documents would be subject to the preparation of a formal modification agreement by defendants' counsel and the execution and delivery of such agreement (see Jordan Panel Sys. Corp. v Turner Constr. Co., 45 AD3d 165, 169-170 [1st Dept 2007] [collecting authorities]; Brause v Goldman, 10 AD2d 328, 332 [1st Dept 1960], affd 9 NY2d 620 [1961]).
Notably, defendants acknowledge that the parties were represented by counsel at the time of the alleged new agreement, and that plaintiff's then-counsel previously had advanced a written proposal to modify the Loan Documents to High Peaks (see Van Buskirk Aff., ¶¶ 18-19). Further, it was the parties' consistent past practice to formalize their business dealings in written agreements drafted by counsel (see id., ¶¶ 8, 11), and there is no evidence that the parties did so with respect to the new agreement alleged by defendants (see id., ¶ 28), which is a contract of the type that ordinarily and customarily is committed to writing. Further, defendants have failed to demonstrate any reliance on their part that clearly is referable to plaintiff's email.
In addition to demonstrating that the parties did not intend to be bound until the execution of a formal, written modification agreement prepared by counsel, plaintiff's reply papers include
subsequent email communications between the parties showing that settlement negotiations continued beyond the May 28, 2015 email exchange that allegedly gave rise to the new contract and that these negotiations ultimately broke down without a meeting of the minds.
On May 29, 2015, plaintiff emailed the Guarantor to inquire when a draft modification agreement would be "ready for [his] review," and the Guarantor responded on June 3, 2015 that he did not "have a draft yet" (Horvath Reply Aff., ¶ 10 & Ex. 2). Then, in or around July 2015, plaintiff received title reports for the real property interests that were the subject of the proposed modification agreement, and he discovered that there were "[s]ignificant title issues" (Horvath Reply Aff., ¶¶ 11-12). Plaintiff advised the Guarantor of these issues by email dated July 14, 2015, stating that he was "losing faith in trying to settle this deal" (id., ¶ 13 & Ex. 3). 
The Guarantor then sought to change the settlement terms in an email dated August 21, 2015, stating: "We feel very strongly that we should get 50% of the gross receipts over $1,000,000 within the first two years" (id., ¶ 15 & Ex. 4).[FN6]
Plaintiff rejected this proposal on August 22, 2015, and the Guarantor responded two days later: "We are not changing the deal. When are we going to complete this?" (id., ¶ 16 & Ex. 4). Sporadic settlement negotiations [*8]between plaintiff and the Guarantor continued through April 2016, when plaintiff met with the Guarantor and advised that settlement was not possible (see id., ¶¶ 17-22 & Exs. 5-6).
The Court concludes that the foregoing proof of settlement negotiations that continued beyond the purported formation of the new contract without a meeting of the minds further establishes that there was "no present intent to form a binding contract [on May 28, 2015], but rather to continue negotiations" pending agreement on the terms of a formal written modification and execution and delivery of such a writing (Brause, 10 AD2d at 332).
In sum, the factual record conclusively establishes that the parties did not intend for the May 2015 email string to constitute a binding contractual agreement, the parties ultimately did not reach an agreement to modify the Loan Documents, and they did not intend to be bound by any agreement in principle to modify the Loan Documents absent execution and delivery of a formal written agreement prepared by counsel (see JPMorgan Chase Bank, 84 AD3d at 1030).[FN7]
Accordingly, defendant's second affirmative defense of accord and satisfaction must be dismissed.
C. Additional Discovery
Finally, defendants argue that plaintiff's motion is premature and that additional discovery is needed, maintaining that "there are significant and essential facts that need to be addressed during discovery and [p]laintiff's deposition" that will permit them to "prove their affirmative defenses" (Defendants' MOL, pp. 10, 15). Specifically, defendants seek to question plaintiff regarding: (1) the alleged modification agreement to release High Peaks from its obligations under the Note; and (2) payments received by plaintiff from defendants (see id.). 
Under CPLR 3212 (f), summary judgment may be denied as premature where the opposing party has not yet had adequate opportunity to conduct discovery. It is necessary for the party opposing summary judgment to demonstrate how further discovery might reveal the existence of evidence within the exclusive knowledge of the movant that would warrant denial of the motion (see Green v Covington, 299 AD2d 636, 637 [3d Dept 2002]; Landes v Sullivan, 235 [*9]AD2d 657, 658 [3d Dept 1997]; Halsey v County of Madison, 215 AD2d 824, 824-825 [3d Dept 1995]). The mere hope that further discovery will disclose such evidence is insufficient (see Clochessy v Gagnon, 58 AD3d 1008, 1010 [3d Dept 2009]; Ramesar v State of New York, 224 AD2d 757, 759 [3d Dept 1996], lv denied 88 NY2d 811 [1996]).
The Court concludes that defendants have failed to demonstrate that information germane to their defenses of accord/satisfaction and payment lie in the exclusive possession of plaintiff.
As stated above, the absence of an accord and satisfaction is demonstrated by the parties' email communications, and it is apparent from defendants' Answer and their opposition to the motion that they have access to the Guarantor's emails with plaintiff. Further, defendants offer no reason to believe that a deposition of plaintiff is required to explain the eight payments made by High Peaks over seven years that total a little more than $5,000, particularly where defendants themselves denominated such payments as royalty payments. Indeed, knowledge regarding these payments lies equally within the possession of High Peaks. 
Thus, defendants have failed to show "that further discovery would lead to competent evidence in support of their [defenses]" that is in the exclusive possession of plaintiff (Younger v Spartan Chem. Co., 252 AD2d 265, 268 [3d Dept 1999]; see Overseas Private Inv. Corp. v Kim, 69 AD3d 1185, 1188 [3d Dept 2010], lv dismissed 14 NY3d 935 [2010]; 1407 Broadway Real Estate LLC v Tsui, 36 Misc 3d 1219[A], 2012 NY Slip Op 51400[U], *6-7 [Sup Ct, NY County 2012]; County Glen, L.L.C. v Himmelfarb, 4 Misc 3d 1015[A], 2004 NY Slip Op 50886[U], *11 [Sup Ct, NY County 2004]). 
CONCLUSION
Based on the foregoing, plaintiff's motion for summary judgment on the first and fourth causes of action alleged in the complaint must be granted. 
Accordingly, it is
ORDERED that the branch of plaintiff's motion for summary judgment on the first cause of action is granted; and it is further
ORDERED that judgment shall be entered in favor of plaintiff and against defendants, jointly and severally, in the principal amount of $276,449.32, plus accrued interest of $67,399.28, together with per-diem interest thereupon from and including July 23, 2016 until the date of entry of judgment; and it is further
ORDERED that the remaining causes of action are severed and continued; and it is further
ORDERED that the branch of plaintiff's motion for partial summary judgment on the fourth cause of action is granted as to liability only; and it is further
ORDERED that the branch of plaintiff's motion to dismiss defendants' defenses is granted, and defendants' affirmative defenses and defense of payment are dismissed; and finally it is
ORDERED that the parties shall appear on August 20, 2018 at 9:30 a.m. in Chambers of the undersigned for a status conference.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, counsel for plaintiff shall promptly serve notice of entry on all other parties to this action (see Uniform Rules for Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]). 
Dated: August 1, 2018
Albany, New York
___________________
RICHARD M. PLATKIN
A.J.S.C.



Footnotes

Footnote 1:Plaintiff was authorized to "declare the full amount of th[e] Note due immediately for any default" (id., Ex. A, ¶ 7), including High Peaks' "failure to pay, within thirty (30) days of the due date, any amount payable under th[e] Note" (id., ¶ 7 [a]). 

Footnote 2:The second cause of action seeks an accounting of "the gross proceeds of all revenues generated from sales, leases and other business pursuits" relative to the real property described in Schedule A to the Royalties Agreement, based on High Peaks' alleged failure and/or refusal "to deliver Federal and State Tax returns" to plaintiff and to permit him to audit its financial records (id., ¶¶ 22-28 [internal quotation marks omitted]). The related third cause of action "demands judgment against [High Peaks] for all payments due and owing, if any, pursuant to the Royalties Agreement in an amount to be determined at trial," together with statutory interest (id., ¶¶ 29-30).

Footnote 3:Defendants have, in any event, abandoned these affirmative defenses in their opposition to the motion (see Town of N. Elba v Grimditch, 131 AD3d 150, 159 n 4 [3d Dept 2015], lvs denied 26 NY3d 903 [2015]; Starkman v City of Long Beach, 106 AD3d 1076, 1078 [2d Dept 2013]).

Footnote 4:In particular, the Note required: (1) monthly payments of $2,800 from October 1, 2013 through September 1, 2014; (2) monthly payments of $1,400 from October 1, 2014 through September 1, 2015; and (3) two principal payments of $140,000 due on September 1, 2014 and September 1, 2015, respectively, with interest payments of $2,800 for the first payment and $1,400 for the second (see Compl., Ex. E, ¶ 2). All but one of the payments cited by defendants was made during the period that this schedule was in effect, but none of these payments correlate with the schedule. The other payment purportedly could not have been made towards the Note, inasmuch as it was made in 2009, almost two years prior to execution of the Original Note.

Footnote 5:Plaintiff argues that the defense of accord and satisfaction fails because his claim under the Note is liquidated, whereas accord and satisfaction only is available when a claim is unliquidated — that is, the claim is "not ascertained in amount; not determined; remaining unassessed or unsettled" (Matter of Biel, 103 AD2d 287, 292 [2d Dept 1984] [internal quotation marks and citation omitted]; see Rosenthal v Quadriga Art, Inc., 105 AD3d 507, 507-508 [1st Dept 2013]). However, plaintiff recognizes that "[t]he general rule is that a liquidated claim, that is, a claim which is not disputed, but admitted to be due, cannot be discharged by any payment of a less amount" (Schnell v Perlmon, 238 NY 362, 367 [1924] [emphasis added]; see Rose Inn of Ithaca, 75 AD3d at 739), and defendants argue that "there is sufficient new or additional consideration [under the alleged new contract] to support the transaction as an accord and satisfaction" (Defendants' Brief, p. 5). Given defendants' failure to demonstrate the formation of the alleged new contract, however, the Court need not delve into this issue.

Footnote 6:This is the same point raised in the Guarantor's email of May 17, 2015, which High Peaks seems to abandon the following day (see supra).

Footnote 7:In any event, the Court agrees with plaintiff that proof of the alleged modification is barred by the Statute of Frauds (see GOL § 5-703), inasmuch as the alleged modification agreement concerns real property, and the May 2015 email string does not "describe the property involved with such definiteness and exactness as will permit it to be identified with reasonable certainty" (Conway v Maher, 185 AD2d 570, 572 [3d Dept 1992] [internal quotation marks and citation omitted]; accord Regan v Real Source Charities, Inc., 45 AD3d 1156, 1157 [3d Dept 2007]; see Cohen v Swenson, 140 AD2d 407, 407 [2d Dept 1988]; see also Schuman v Strauss, 139 AD2d 502, 503 [2d Dept 1988], lv denied 72 NY2d 804 [1988]). In particular, the parties' emails refer to "24,000 acres . . . so the whole block that is shown on the map ; "25% royalty on all remaining acres"; and "10% commission on all sales that is on [plaintiff's] acreage" (Ans., Ex. 1; see Van Buskirk Aff., Ex. D). There is no map, survey, metes and bounds description, address or tax identification number referenced in or attached to any of the emails. In fact, plaintiff requested a "tax map" of the 24,000 acres in his email of May 28, 2015 (id.). "Although, in some instances, extrinsic evidence may be admitted to enable a court to definitively ascertain the property to which the contract referred, here [defendants] ha[ve] failed to provide such evidence" (Cohen, 140 AD2d at 407).